UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NEW YORK SMSA LIMITED PARTNERSHIP
D/B/A VERIZON WIRELESS, NEW
CINGULAR WIRELESS PCS LLC, and
T-MOBILE NORTHEAST LLC,

                    Plaintiffs,

        v.

TOWN OF HEMPSTEAD and TOWN BOARD
OF THE TOWN OF HEMPSTEAD,

                    Defendants.

Case No. 2:10-CV-04997 (AYS)

**STIPULATION OF SETTLEMENT
AND ORDER**

      **WHEREAS**, Plaintiffs New York SMSA Limited Partnership d/b/a Verizon Wireless, New Cingular Wireless PCS LLC and T- Mobile Northeast LLC (collectively, "Plaintiffs") commenced an action on October 29, 2010 against Defendants Town of Hempstead, New York (the "Town") and Town Board of the Town of Hempstead (the "Town Board" collectively, "Defendants") (Plaintiffs and Defendants are each a "Party" and are collectively, the "Parties") challenging Chapter 142 of the Town Code the "Ordinance") and the fees charged pursuant thereto.

      **WHEREAS**, Plaintiffs filed a First Amended Complaint on April 12, 2013 and the operative Second Amended Complaint on August 16, 2013;

      **WHEREAS**, the Second Amended Complaint seeks declaratory and injunctive relief against Defendants alleging that the Ordinance (1) prohibits or has the effect of prohibiting the provision of telecommunications services in violation of 47 U.S.C. §§ 253 and 332(c)(7)(B)(i)(II), and 1455 by: (i) incorporating an unlawful preference based on municipal ownership; (ii) imposing unreasonable or discriminatory fees and compensatory provisions; (iii) imposing a burdensome and lengthy application process leading to unlawful delay and excessive consultant fees; and (iv) implementing overly restrictive transfer regulations; (2) unlawfully regulates the

placement of wireless facilities based upon the environmental effects of radiofrequency emissions, in violation of 47 U.S.C. § 332 (c)(7)(B)(iv); (3) unlawfully discriminates among and against wireless providers providing functionally equivalent services, in violation of 47 U.S.C. § 332(e)(7)(B)(i)(I); (4) attempts to regulate the provision of wireless service and the technical and operational aspects of wireless service in a manner that intrudes on a field of regulation reserved exclusively to the federal government and conflicts with the Federal Communications Commission's exclusive authority to establish technical standards for wireless service; (5) regulates the entry and rates of commercial mobile services, in violation of 47 U.S.C. § 332 (c)(A); (6) prohibits or has the effect of prohibiting the provision of telecommunications services by vesting the Town with unbounded discretion to deny or condition the grant of applications, in violation of 47 U.S.C. §§ 253 and 332 (c)(7)(B)(i)(II); (7) prohibits or has the effect of prohibiting the modification and collocation of wireless facilities, in violation of 47 U.S.C. § 1455; (8) exceeds the scope of zoning power, in violation of the New York Constitution; (9) acts in an arbitrary manner with respect to unduly burdensome provisions of the Ordinance, in violations of the New York Constitution; (10) enacts inconsistent and vague provisions, rendering it void under the New York Constitution; (11) violates SEQRA; (12) unlawfully allows Town officials and third party consultants to claim a right to access private property without probable cause and without a search warrant and its attendant safeguards, in violation of the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983; (13) allows the Town to use evidence obtained via warrantless searches as evidence in criminal proceedings, in violation of the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983; (14) creates an enforcement regime with excessive fines and penalties grossly disproportionate to the level of offense, in violation of the Eighth Amendment to the United States Constitution; (15) imposes disproportionate fees on wireless

applications which have no nexus or proportionality with the supposed impacts allegedly being evaluated and mitigated by the Town and its consultants, in violation of the Taking Clause of the Fifth Amendment to the United States Constitution; (16) imposes requirements, including fee requirements, on wireless carriers that are not imposed on similarly–situated entities, in violation of the Equal Protection Clause of the United States Constitution, 42 U.S.C. § 1983, and the New York Constitution; and, (17) allows the Town to seek significant civil and criminal penalties for violations that are grossly disproportionate to the offenses to be charged, without the opportunity for affected parties to refute or cure the alleged defects, in violation of the Due Process Clause of the United States Constitution, 42 U.S.C. § 1983, and the New York Constitution;

**WHEREAS**, Defendants have represented that the Town Board intends to repeal and replace the Ordinance and to amend certain fees imposed on wireless telecommunications facilities by Section 86-11 of the Town Code;

**WHEREAS**, Defendants have represented that the Town intends to issue a Request for Proposal for a new Consultant, as that term is used in the Ordinance.

**WHEREAS**, the above-named Parties have agreed to settle this action, pursuant to the terms and conditions set forth herein; and

**WHEREAS**, all Parties, intending to be legally bound, have consulted with their legal counsel, and the undersigned counsel herein having the requisite authority and approval to enter into this Stipulation of Settlement and Order ("Stipulation").

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY THE PARTIES AND ORDERED BY THE COURT THAT UPON EXECUTION AND COURT APPROVAL OF THIS STIPULATION:**

1.    The Town Board acknowledges that the Town's Wireless Telecommunications Code ("Town Code Chapter 142") and the fee schedule contained in Section 86-11 of the Town Code ("Fee Schedule") are not in compliance with federal law.  The Town has advised the Plaintiffs that it intends to repeal the current version of Chapter 142 and the Fee Schedule and enact new ordinances (the "Proposed Ordinances") in the form annexed hereto as Exhibit "A."  In the event the Town Board does not repeal the existing ordinance and enact the Proposed Ordinances on or before December 6, 2022, then any Plaintiff may, in its sole discretion, void this Stipulation in its entirety and reinstate the currently pending action and summary judgment motion. In the event there is a successful lawsuit, stay or injunction or any kind with respect to the Proposed Ordinances and/or this Stipulation, the Town will expeditiously take all measures to remedy any and all deficiencies and re-enact the Proposed Ordinances and/or this Stipulation to bring them into compliance with all federal, state and local laws, statutes and ordinances, including but not limited to those identified in the lawsuit, stay or injunction.

2.    The Parties have entered into a separate agreement dated November 30, 2022 (the "Consultant Agreement") regarding past fees and use of future consultants.  The Consultant Agreement is hereby incorporated by reference herein.

3.    The Town shall direct any Consultant it uses pursuant to the Proposed Ordinances to send a copy on a monthly basis directly to the Applicant of any invoices tendered to the Town within thirty (30) days of the end of the month in which such work was performed.  The Town shall not pay any Consultant invoice that the Consultant fails to send to the Applicant in accordance with the foregoing.

5.    This Stipulation is without prejudice to Plaintiffs' right to bring any legal challenge to the Proposed Ordinances, including facial or as-applied challenges.

6. The parties acknowledge that this Stipulation was the product of negotiation by all parties through their counsel, including negotiation as to the language set forth herein, and as such, to the extent there is any issue with respect to any alleged, perceived, or actual ambiguity in this Stipulation, the ambiguity shall not be resolved on the basis of who drafted this Stipulation.

7. The Proposed Ordinances were drafted by the Town, and as such, to the extent there is any issue with respect to any alleged, perceived, or actual ambiguity or illegality in the Proposed Ordinances, including the amount of the fees, the ambiguity or illegality shall not be attributed to Plaintiffs.

8. Except as provided in paragraph "1" herein, upon the execution of this Stipulation by or on behalf of all Parties and the "So Ordered" entry of this Stipulation by the Court, this action is dismissed in its entirety, with prejudice, and without fees, costs, disbursements, damages, interest, or attorneys' fees for or against any party.

9. This Court shall retain jurisdiction to enforce the terms of this Stipulation, the Consultant Agreement, and the Proposed Ordinances. Any Party may request leave to re-open, by letter to the Court, to enforce this Stipulation. The letter shall confirm that the Parties met and conferred in a good faith attempt to resolve any issues, before requesting to re-open this action.

10. This Stipulation, together with its exhibits and the Consultant Agreement, constitute the entire agreement among the parties relating to the subject matter thereof, and supersedes and terminates any and all prior agreements among the parties relating to the subject matter thereof, whether written or oral. All prior and contemporaneous discussions and negotiations have been and are merged and integrated into, and superseded by, this Stipulation, its exhibits and the Consultant Agreement.

**DEFENDANTS:**

_[signature]_

Joseph E. Macy
Donna A. Napolitano
BERKMAN, HENOCH, PETERSON & PEDDY, PC
100 Garden City Plaza
Garden City, NY 11530
Tel.: (516) 222-6200
Fax: (516) 222-6209
E-Mail: j.macy@bhpp.com with a copy to d.napolitano@bhpp.com
_Attorneys for Defendants, Town of Hempstead, New York, and Town Board of the Town of Hempstead_

**PLAINTIFFS:**

Alfred L. Amato
Cem Ozer
AMATO LAW GROUP, PLLC
666 Old Country Road, Suite 901
Garden City, New York 11530
Tel.: (516) 227-6363
Fax: (516) 227-6367
E-Mail: amato@amatofirm.com
_Attorneys for Plaintiff, New York SMSA Limited Partnership d/b/a Verizon Wireless_

Brendan M. Goodhouse
Christopher B. Fisher
CUDDY & FEDER LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Tel.: (914) 761-1300
Fax: (914) 761-5372
E-Mail: bgoodhouse@cuddyfeder.com
          cfisher@cuddyfeder.com
_Attorneys for Plaintiff, New Cingular Wireless PCS, LLC_

Joseph E. Macy
Donna A. Napolitano
BERKMAN, HENOCH, PETERSON & PEDDY, PC
100 Garden City Plaza
Garden City, NY 11530
Tel.: (516) 222-6200
Fax: (516) 222-6209
E-Mail: j.macy@bhpp.com with a copy to d.napolitano@bhpp.com
*Attorneys for Defendants, Town of Hempstead, New York, and Town Board of the Town of Hempstead*

**PLAINTIFFS:**

Alfred L. Amato
Cem Ozer
AMATO LAW GROUP, PLLC
666 Old Country Road, Suite 901
Garden City, New York 11530
Tel.: (516) 227-6363
Fax: (516) 227-6367
E-Mail: amato@amatofirm.com
*Attorneys for Plaintiff, New York SMSA Limited Partnership d/b/a Verizon Wireless*

Brendan M. Goodhouse
Christopher B. Fisher
CUDDY & FEDER LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Tel.: (914) 761-1300
Fax: (914) 761-5372
E-Mail: bgoodhouse@cuddyfeder.com
        cfisher@cuddyfeder.com
*Attorneys for Plaintiff, New Cingular Wireless PCS, LLC*

---

Joseph E. Macy
Donna A. Napolitano
BERKMAN, HENOCH, PETERSON & PEDDY, PC
100 Garden City Plaza
Garden City, NY 11530
Tel.: (516) 222-6200
Fax: (516) 222-6209
E-Mail: j.macy@bhpp.com with a copy to d.napolitano@bhpp.com
*Attorneys for Defendants, Town of Hempstead, New York, and Town Board of the Town of Hempstead*

**PLAINTIFFS:**

---

Alfred L. Amato
Cem Ozer
AMATO LAW GROUP, PLLC
666 Old Country Road, Suite 901
Garden City, New York 11530
Tel.: (516) 227-6363
Fax: (516) 227-6367
E-Mail: amato@amatofirm.com
*Attorneys for Plaintiff, New York SMSA Limited Partnership d/b/a Verizon Wireless*

---

Brendan M. Goodhouse
Christopher B. Fisher
CUDDY & FEDER LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Tel.: (914) 761-1300
Fax: (914) 761-5372
E-Mail: bgoodhouse@cuddyfeder.com
        cfisher@cuddyfeder.com
*Attorneys for Plaintiff, New Cingular Wireless PCS, LLC*

Robert D. Gaudioso
Snyder & Snyder, LLP
94 White Plains Road
Tarrytown, New York 10591
Tel.: (914) 333-0700
Fax: (914) 333-0743
E-Mail: rgaudioso@snyderlaw.net

Martin L. Fineman
Davis Wright Tremaine LLP
50 California Street, 23d Floor
San Francisco, California 94111-4795
Tel.: (415) 276-6500
Fax: (415) 276-6599
E-Mail: martinfineman@dwt.com
*Attorneys for Plaintiff, T-Mobile Northeast LLC*

Dated: November 30, 2022

SO ORDERED:

Honorable Anne Y. Shields
United States Magistrate Judge

# EXHIBIT "A"

CASE NO.                           RESOLUTION NO.

Adopted:

Council                                  offered the following resolution and moved its

adoption:

RESOLUTION AND ORDER DECLARING THE TOWN BOARD OF THE
TOWN OF HEMPSTEAD AS LEAD AGENCY IN CONNECTION WITH THE
REPEAL AND REENACTMENT OF CHAPTER 142 OF THE CODE OF THE
TOWN    OF    HEMPSTEAD    ENTITLED    "WIRELESS
TELECOMMUNICATIONS FACILITIES" AND ISSUING A NEGATIVE
DECLARATION UNDER THE STATE ENVIRONMENTAL QUALITY
CONTROL ACT (SEQR) OF THE ENVIRONMENTAL CONTROL LAW
PURSUANT TO 6 N.Y.C.R.R. 617.7.

WHEREAS, the Town of Hempstead, has concluded that it is necessary to repeal, amend

and reenact Chapter 142 of the Town's Code to address changes in the federal and state law since

Chapter 142 was first enacted in 2013; and

WHEREAS, the proposed action involves the enactment of a local law regulating wireless

telecommunications facilities within the Town and

WHEREAS, the proposed action is either a Type II action as defined by 6 N.Y.C.R.R. §

617.5 for which environmental review is not required or an Unlisted Action as defined in 6

N.Y.C.R.R. § 617.2 for which the Town Board of the Town of Hempstead is the lead agency for

purposes of uncoordinated environmental review in connection with the approval of the Resolution

by the Town Board; and

WHEREAS, the Town Board of the Town of Hempstead, in performing its function as lead

agency for the independent and uncoordinated environmental review in accordance with Article 8

of the State Environmental Quality Review Act (i) reviewed the Environmental Assessment Form

(EAF) prepared and submitted with respect to this proposed action, and (ii) thoroughly analyzed

the potential relevant areas of environmental concern to determine if the proposed action may have

a significant adverse impact on the environment, including the criteria identified in 6 N.Y.C.R.R.

§ 617.7(c).

NOW, THEREFORE, BE IT RESOLVED AS FOLLOWS:

The Town Board of the Town of Hempstead, based upon its thorough review of the EAF

prepared and submitted with respect to this proposed action and its environmental review, a review

of the potentially relevant areas of environmental concern to determine whether the proposed

28235

action may have a significant adverse impact on the environment, including the criterial set forth in 6 N.Y.C.R.R. § 617.7(c), hereby makes the following determinations:

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town will not cause a substantial adverse change in existing air quality, ground or surface water quality or quantity, traffic or noise levels; a substantial increase in solid waste production; a substantial increase in potential for erosion, flooding, leaching or drainage problems.

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town will not involve the removal or destruction of large quantities of vegetation or fauna; substantial interference with the movement of any resident or migratory fish or wildlife species; impacts on significant habitat area; substantial adverse impacts on a threatened or endangered species of animal or plant, or the habitat of such species or other natural resources.

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town will not impair the environmental characteristics of any Critical Environmental Area.

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town will not result in the creation of a material conflict with the community's current plans or goals.

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town does not impair the character or quality of historical, archeological or aesthetic resources or an existing community or neighborhood character.

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town does not result in a major change in the use or either the quantity or type of energy.

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town does not create a condition hazardous to human health.

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town does not cause a substantial change in the use, intensity of use of land.

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town

The repeal of existing Chapter 142 and the reenactment of Chapter 142 to regulate wireless telecommunications facilities within the geographic limits of the Town will not cause changes in two or more elements of the environment.

In reaching these conclusions, the Town Board has evaluated and considered both the long-term and short-term impacts of this action.

Accordingly, the Town Board of the Town of Hempstead issues a negative determination of environmental significance ("Negative Declaration") in accordance with SEQR for the proposed

action and determines that neither a full Environmental Assessment Form, nor an Environmental Impact Statement will be required; and

The Clerk of the Town Board of the Town of Hempstead is hereby authorized and directed to complete and sign the determination of significance confirming the foregoing Negative Declaration, which, when fully completed and signed shall be incorporated by reference in this Resolution and filed with the Town Board as lead agency.

The foregoing resolution was adopted upon roll call as follows:

AYES:

NOES:

Town of Hempstead

A local law to repeal and reenact Chapter one hundred forty-two of the Code of the Town of Hempstead to be entitled, "Wireless Telecommunications Facilities."

Introduced by:

Be it enacted by the Town Board of the Town of Hempstead as follows:

Chapter 142

Wireless Telecommunications Facilities

Article I.     General Provisions

§142-1.     Legislative Intent
§142-2.     Legislative Authority
§142-3.     Definitions and word usage
§142-4.     Exemptions
§142-5.     Variances

Article II.     Standards for Design and Placement

§142-6.     Locational Considerations and Preferences
§142-7.     Criteria for Review
§142-8.     General Aesthetic Requirements
§142-9.     Specific Locational Aesthetic Requirements
§142-10.     Noise
§142-11.     Building Permit and Special Use Permit Requirements

Article III.     Standards for Towers

§142-12.     Tower Requirements
§142-13.     Additional Standards for new Towers and Towers Increasing in Height

Article IV.     Eligible Facility Requests and Small Wireless Facility Applications

1

Item # _____ 10

28235

§142-14.        Applications for Eligible Facility
                Requests and Small Wireless
                Facilities

Article V.      Public Lands and Structures

§142-15.        Municipal Facilities, Municipal
                Property and Public Rights-of-Way
§142-16.        Application Requirements
§142-17.        Public Hearing; notice
§142-18.        Town Board action on license
                applications
§142-19.        Conditions of Approval
§142-20.        Insurance Requirements

Article VI.     Private Lands and Structures

§142-21.        Privately-Owned Property
§142-22.        Application Requirements
§142-23.        Action on Applications
§142-24.        Proper Maintenance; compliance
                with law

Article VII.    Application Requirements

§142-25.        Required documentation

Article VIII.   Authority of the Board

§142-26.        Authority of the Board
§142-27.        Retention of outside Consultant(s)
                and independent studies

Article IX.     Dispute Resolution

§142-28.        Dispute Resolution

Article X.      Post-Approval Monitoring

§142-29.        Access to Wireless
                Telecommunications Facilities
§142-30.        Revocation or suspension of
                certificates, permits or other
                approvals
§142-31.        Violation

4854-6728-6566v.1 0048172-000592

Article XI.        Abandonment of Facilities

§142-32.           Abandonment

Article XII        Administration and Enforcement

§142-33.           Notice to Comply
§142-34.           Stop-work orders
§142-35            Penalties for Violations

ARTICLE I
GENERAL PROVISIONS

§142-1. Legislative intent.

In 2013, pursuant to L.L. 47-2013, the Town Board of the Town of Hempstead enacted Chapter 142 of the Code of the Town of Hempstead to address the rapidly expanding need for infrastructure to provide wireless telecommunications services. In adopting its original wireless telecommunications code, the Town Board recognized both the significant benefits of wireless telecommunications and the concerns expressed by many residents over the proliferation of large infrastructure to provide these expanding services. As originally enacted, Chapter 142 sought to establish a fair, efficient and comprehensive process for the review and approval of applications for the construction and installation of wireless telecommunications facilities.

Since the original enactment of Chapter 142, wireless telecommunications has undergone both a technological and regulatory revolution. The Telecommunications Act of 1996 (P.L. 104-104) codified the intention of the United States Congress to promote the deployment of wireless infrastructure. Subsequent regulatory rulings by the Federal Communications Commission have sought to further implement these goals, recognizing that it is the physical infrastructure that supports wireless communications and promotes the intentions of Congress. Demand for wireless capacity has grown exponentially since the original enactment of Chapter 142 in order to support growing adoption of wireless broadband.

The Town's original wireless telecommunications code was adopted at a time when the majority of telecommunications

3

4854-6728-6566v.1 0048172-000592

infrastructure was deployed on enormous towers. As originally enacted, Chapter 142 sought to foster the development of wireless telecommunications while minimizing the impact of its infrastructure. The unique and priceless suburban character of the Town of Hempstead required a substantial level of regulatory oversight to promote the development of these vital services while ensuring that they were located and constructed in a manner which protected the special character of the Town and protected the interests of its residents. While macro facilities continue to be an important component of the infrastructure deployed to provide wireless communications, the Town Board acknowledges and concurs in the statement of the Federal Communications Commission that there are now a variety of complementary and alternative technologies which impose a far less obtrusive impact on the surround community.

Wireless Telecommunications Facility Applications include a variety of application types that can be reviewed by the Department of Buildings and the Board of Zoning Appeals. The Town Board has determined that it is in the best interests of town residents to establish updated standards for the location of Wireless Telecommunication Facilities and the provision of communication services consistent with applicable federal and state laws, statutes, rules and regulations in order to:

A. Protect the health, safety and welfare of the residents of the Town.

B. Assure access of our residents to wireless telecommunications technologies while at the same time protecting natural features, aesthetics, and the residential character of neighborhoods and areas surrounding educational, environmentally sensitive, historic and other unique or sensitive facilities within the Town and protect the efficient and orderly development of land uses from potential adverse impacts.

C. Promote and encourage the location of these devices in nonresidential areas of the Town.

D. Minimize the total number of such devices constructed throughout the Town within legal limits.

4

E. Promote and encourage joint use of such new and existing structures and discourage the erection of such structures for single users.

F. Promote and encourage the location of such devices, to the extent possible, in areas where adverse impacts on the surrounding neighborhoods are minimized.

G. Promote and encourage the configuration of such devices in a manner that minimizes adverse visual and aesthetic impacts through careful design, siting, landscape screening, and innovative camouflaging techniques.

H. Promote the ability of service providers to supply such services as effectively and efficiently as possible.

I. Prohibit potential damage to adjacent and/or nearby properties from collapse or failure of such devices through adequate engineering and siting requirements.

J. Verify that proposed Wireless Telecommunication Facilities and other facilities subject to this legislation comply with federally established limits for RF (radiofrequency) exposure.

K. Require Applicants to prepare RF propagation studies and produce such other proof as is reasonably necessary to establish that the proposed facility is necessary to remedy a Gap in Service, Densification of a wireless network, introducing new services, frequency bands, or otherwise improving service capabilities at a specified location.

L. Ensure meaningful input by the community into important land use decisions.

M. Minimize intrusions on pedestrian and vehicular travel and safety on roads, streets and sidewalks.

These regulations are not intended to prohibit or have the effect of prohibiting the provision of adequate Wireless Telecommunications Services.

§142-2. Legislative Authority

This Chapter is enacted as a local law under the Municipal Home Rule Law, and pursuant to all applicable authority granted by the state and federal governments.

5

4854-6728-6566v.1 0048172-000592

§142-3.  Definitions and word usage. The following terms shall have the meanings indicated.  When not inconsistent with the context, words in the present tense include the future tense, words used in the plural number include words in the singular number and words in the singular number include the plural number.  The word "shall" is always mandatory and not merely directory.

ANTENNA - A system of electrical conductors designed for the purpose of emitting or receiving electromagnetic waves or radio frequency or other wireless signals from a fixed location.

ANTENNA ARRAY - An Antenna Array (or Array Antenna) is a set of multiple connected Antennas which work together as a single Antenna, to transmit or receive radio waves.

APPLICANT - The Person or entity submitting an Application for a Wireless Telecommunications Facility.

APPLICATION - All necessary and appropriate information and data submitted by an Applicant that is necessary to receive approval for Wireless Telecommunications Facilities from the Board or Department having jurisdiction.

BOARD - The Board of Zoning Appeals as applicable.

COLLOCATION - The use of an existing Telecommunications Wireless Facility or location by more than one Telecommunications provider, which includes sharing an Antenna, Tower, or mounting location, and which may include Modifications to the existing facility for the purpose of mounting or installing new Antennas.  Consistent with the Code of Federal Regulations, the term Collocation shall also be defined to include the mounting, installation or modification of an Antenna on a pre-existing structure (47 C.F.R. § 1.6002(g)).

COMMERCIAL IMPRACTIBILITY OR COMMERCIALLY IMPRACTICABLE - The inability to perform an act on terms that are reasonable in commerce, the cause or occurrence of which could not have been reasonably anticipated or foreseen and that jeopardizes the financial efficacy of the project.  The inability to achieve a satisfactory financial return on investment or profit, standing alone, shall not deem a situation to be

6

"Commercially Impracticable" and shall not render an act or the terms of an agreement "Commercially Impracticable."

COMMISSIONER - The Town's Commissioner of Buildings or his/her designee.

CONSULTANT - An individual or entity consisting of qualified professionals retained by the Town at the Applicant's reasonable expense necessary to verify that the proposed Wireless Telecommunication Facility subject to this Chapter complies with the applicable limits for RF exposure, and where necessary to advise the Town on any technical aspect of the Application including conducting a physical inspection of the site or facility.

CONSULTANT ESCROW - An escrow account established pursuant to this Chapter funded by an Applicant and used to pay the reasonable and necessary fees of a Consultant.

DENSIFICATION - The establishment by the Applicant of sufficient Wireless Telecommunications capacity to not only provide basic area coverage but to also meet all reasonably foreseeable demand for communications and data in the service area.

DISTRIBUTED ANTENNA SYSTEM (DAS) - A network of spatially separated Antenna nodes connected to a common source via a transport medium that provides wireless service within a geographic area or structure.

ELIGIBLE FACILITY REQUEST - Any request for the Modification of an existing Tower or base station that does not Substantially Change the physical dimensions of such Tower or base station as defined in Section 6409(a) of the Middle Class Tax Relief and Job Creation Act of 2012 ("The Spectrum Act") or hereafter amended, involving:

> (1)  The Collocation of new Transmission Equipment; or
>
> (2)  The removal of Transmission Equipment; or
>
> (3)  The replacement of Transmission Equipment.

FAA - The Federal Aviation Administration of the United States or successor agency.

7

4854-6728-6566v.1 0048172-000592

FCC – The Federal Communications Commission of the United States or successor agency.

GAP IN SERVICE – A Gap in Service exists where a remote user of services is unable to either connect with the land-based national telephone network, or to maintain a connection capable of supporting a reasonably uninterrupted communication. When a coverage Gap exists customers cannot receive and send signals, and when customers pass through a coverage Gap their calls are disconnected.

HEIGHT – The distance measured from the lowest point to the highest point on the Tower or other structure, including the highest point of the mount, Antenna, or any lightning protection device attached to the Tower or structure. Changes in Height should be measured from the original support structures in cases where deployments are or will be separated horizontally, such as on the rooftops of buildings; in circumstances involving Eligible Facilities Requests, changes in Height should be measured from the dimensions of the Tower or base station, inclusive of originally approved appurtenances and any Modifications that were approved prior to the passage of the Spectrum Act.

LICENSE AGREEMENT – A written agreement between the Town and an Applicant which authorizes the Applicant to erect, install, attach, deploy, operate, maintain, alter or modify any Wireless Telecommunications Facility on Municipal Property, a Municipal Facility or, in the public right-of-way and which governs the terms and conditions of the use.

MODIFICATION OR MODIFY – The addition, removal, replacement, or change of any of the physical and visually discernable components or aspects of a Wireless Telecommunication Facility, such as Antennas, cabling, equipment shelters, equipment cabinets, generators, utility feeds, Tower Height and mounting Heights, or changing the color or materials of any visually discernable components. Adding a new wireless carrier or service provider to a Wireless Telecommunications Facility as a Collocation is a Modification.

MUNICIPAL FACILITIES – Town-owned streetlamps, light poles, lighting fixtures, electroliers, flagpoles, and other similar town-owned structures, excluding such facilities in the Public Rights-of-Way.

8

4854-6728-6566v.1 0048172-000592

MUNICIPAL PROPERTY – Town-owned buildings, and the space in, upon, above, under, along, across, and over real property that is under the sole ownership, jurisdiction, possession and control of the Town, except property licensed to the Town, any property where the Town holds an easement or other beneficial interest, Public Rights-of-Ways, and underwater lands.

PERMIT OR PERMITTED – Any structure, facility or equipment for which any permit required by applicable law has been previously issued and has not been revoked and which structure, facility or equipment has not been modified in violation of the issued permit.

PERSON – Any individual, corporation, estate, trust, partnership, joint stock company, association of two (2) or more Persons having a joint common interest, or any other business entity.

PERSONAL TELECOMMUNICATIONS SERVICE (PCS) or PERSONAL WIRELESS SERVICES (PWS) – These terms shall have the same meaning as defined and used in the 1996 Telecommunications Act or successor law.

PUBLIC RIGHTS-OF-WAY or RIGHTS-OF-WAY – The space in, upon, above, under, along, across and over the public streets, roads, highways, lanes, courts, ways, alleys, sidewalks, and similar places, that are under the jurisdiction and exclusive control of the Town together with public utility easements and public service easements. The term shall not include county, state, or federal rights-of-way or places owned by the Town jointly with another Person, entity or agency.

SCOPE OF WORK – A written description of the issues and elements of any Application to be reviewed by the Town's Consultant and setting forth the work to be performed by the Consultant in order to conduct such review and analysis. All such work must be reasonable and necessary. A copy of the Scope of Work shall be provided to the Applicant before the Consultant commences work.

SENSITIVE LOCATIONS – The area within 100 feet of historic landmarks as listed on the federal or state registry of historic places or as designated pursuant to Chapter 76 of the Code of the Town of Hempstead.

4854-6728-6566v.1 0048172-000592

SITE – For the purpose of determining whether an excavation or deployment is within or outside of a proposed Site and is therefore a Substantial Change, the term Site shall include Towers other than Towers in the Public Rights-of-Way, the current boundaries of the leased or owned property surrounding the Tower and any access or utility easements currently related to the Site, and, for other eligible support structures, further restricted to that area in proximity to the structure and to other Transmission Equipment already deployed on the ground. The current boundaries of a Site are the boundaries that existed as of the date that the original support structure or a Modification to that structure was last reviewed and approved by the Town if the approval of the Modification occurred prior to the Spectrum Act [Eff. February 22, 2012] or otherwise outside of the Section 6409 (a) process.

SMALL WIRELESS FACILITY (OR FACILITIES) – Any Wireless Telecommunications Facility which meets the following criteria as set forth in 47 C.F.R. § 1.6002(1)(1) – (6) or as it may be amended after the effective date of this Chapter, where

(1) The facilities:

(i) Are mounted on structures 50 feet or less in height including their antennas as defined in § 1.1320(d); or

(ii) Are mounted on structures no more than 10 percent taller than other adjacent structures; or

(iii) Do not extend existing structures on which they are located to a height of more than 50 feet or by more than 10 percent, whichever is greater;

(2) Each antenna associated with the deployment, excluding associated antenna equipment (as defined in the definition of antenna in § 1.1320(d)), is no more than three cubic feet in volume;

(3) All other wireless equipment associated with the structure, including the wireless equipment associated with the antenna and any pre-existing associated equipment on the structure, is no more than 28 cubic feet in volume;

10

(4) The facilities do not require antenna structure registration under part 17 of this chapter;

(5) The facilities are not located on Tribal lands, as defined under 36 CFR 800.16(x); and

(6) The facilities do not result in human exposure to radiofrequency radiation in excess of the applicable safety standards specified in § 1.1307(b).

SPECIAL USE PERMIT – The official document or permit granted by the Board pursuant to which an Applicant is authorized to obtain a building permit from the Department of Buildings to construct a new wireless telecommunications facility.

STEALTH OR CONCEALMENT TECHNOLOGY – The minimization of potential adverse aesthetic and visual impacts from the installation of Wireless Telecommunications Facilities as directed in this Chapter.

SUBSTANTIAL CHANGE – A modification substantially changes the physical dimensions of an eligible support structure if it meets any of the following criteria:

   (1) For towers other than towers in the public rights-of-way, it increases the height of the tower by more than 10% or by the height of one additional antenna array with separation from the nearest existing antenna not to exceed twenty feet, whichever is greater; for other eligible support structures, it increases the height of the structure by more than 10% or more than ten feet, whichever is greater;

   (2) For towers other than towers in the public rights-of-way, it involves adding an appurtenance to the body of the tower that would protrude from the edge of the tower more than twenty (20) feet, or more than the width of the tower structure at the level of the appurtenance, whichever is greater; for other eligible support structures, it involves adding an appurtenance to the body of the structure that would protrude from the edge of the structure by more than six (6) feet;

   (3) For any eligible support structure, it involves installation of more than the standard number of new equipment cabinets for the technology involved, but

11

4854-6728-6566v.1 0048172-000592

not to exceed four (4) cabinets; or, for towers in the public rights-of-way and base stations, it involves installation of any new equipment cabinets on the ground if there are no pre-existing ground cabinets associated with the structure, or else involves installation of ground cabinets that are more than 10% larger in height or overall volume than any other ground cabinets associated with the structure.  A generator shall be considered the equivalent of two (2) new equipment boxes;

(4) It entails any excavation or deployment outside of the current Site, except that, for towers other than towers in the public rights-of-way, it entails any excavation or deployment of transmission equipment outside of the current site by more than 30 feet in any direction. The site boundary from which the 30 feet is measured excludes any access or utility easements currently related to the site;

(5) It would defeat the concealment elements of the eligible support structure; or

(6) It does not comply with conditions associated with the siting approval of the construction or modification of the eligible support structure or base station equipment, provided however that this limitation does not apply to any modification that is non-compliant only in a manner that would not exceed the thresholds identified in 47 C.F.R. § 1.40001(b)(7)(i) through (iv).

TELECOMMUNICATIONS – The transmission and/or reception of audio, video, data, and other information by wire, radio frequency, light, and other electronic or electromagnetic systems.

TOWER – Any structure built for the sole or primary purpose of supporting any FCC authorized Antennas and their associated facilities, including structures that are constructed for Wireless Telecommunications services including, but not limited to, private, broadcast, and public safety services, as well as unlicensed Wireless Telecommunications Facilities and fixed services, and the associated site. A Tower shall include the structure and any support systems appurtenant thereto. Any pole, mast, mount, or other structure, and all attached equipment, including

12

4854-6728-6566v.1 0048172-000592

Antennas, exceeding 50 feet in Height above ground level shall be considered a Tower.

TOWN — The Town of Hempstead, Town of Hempstead Town Board, and any subdivision thereof, including Town-operated special improvement districts and agencies.

TRANSMISSION EQUIPMENT — Equipment that facilitates transmission for any Commission-licensed or authorized wireless communication service, including, but not limited to, radio transceivers, antennas, coaxial or fiber-optic cable, and regular and backup power supply. The term includes equipment associated with wireless communications services including, but not limited to, private, broadcast, and public safety services, as well as unlicensed wireless services and fixed wireless services such as microwave backhaul.

WIRELESS TELECOMMUNICATIONS FACILITY (OR FACILITIES) — Includes Antennas, Towers, and any structure, equipment, installation, facility, device, wires, cables or appurtenance designed, installed or intended to be used to support Antennas or other transmitting or receiving devices used for the purpose of transmitting, receiving, distributing, providing or accommodating data, cellular, radio, television, specialized mobile radio (SMR), enhanced specialized mobile radio (ESMR), paging, 911, Personal Telecommunication Services (PCS), commercial satellite services, microwave, mobile and any commercial Wireless Telecommunication service not licensed by the FCC, including without limit mounts, Towers of all types, structures, buildings, church steeples, or anything that is used to support Antennas or its functional equivalent; and Distributed Antenna Systems (DAS) including all accessory facilities, installations, and equipment such as utility poles, transmission cables, wires, mounts, cabling, equipment shelters and other appurtenances.

§142-4. Exemptions. Unless otherwise provided, this Chapter shall not apply to the following:

A. All Antennas which are accessory to permitted residential uses and are mounted on the residential dwelling without a tower, including but not limited to the reception Antennas for direct broadcast satellites (DBS), television broadcast stations (TVBS) and other customer-end Antennas that receive and transmit fixed wireless signals that are primarily used for reception.

13

4854-6728-6566v.1 0048172-000592

B. Such uses that are licensed to operate by the Federal Communications Commission, pursuant to 47 CFR 97, or successor law, such as amateur radio operations, private citizen's bands, and other similar non-commercial Telecommunications, subject to the provisions of Article IX of Chapter 198 (Height, Area & Bulk Regulations).

C. Uses which are pre-empted or exempt from local regulation by federal or state law or regulation including uses on State or County property or Rights-of-Way except that the Town shall retain jurisdiction to review and issue any permit of general applicability, including any building permit relating to the construction of a Wireless Telecommunications Facility.

D. Repairs and maintenance to existing equipment shall not require any permits from the Town unless otherwise determined by the Commissioner or his designee.

E. No license agreement shall be required of any entity that already holds a cable franchise issued by the Town for cable service as defined in 47 U.S.C.A. §522(6), or telephone franchise, except that proposed installations of cabinets, boxes, equipment or other structures on the ground or partially below the surface of the ground along the public rights-of way shall be subject to review by the Department of Buildings to determine the suitability of the proposed location for the proposed installation, highway work permits, building permits, and certificates of occupancy. The provisions of this section shall apply to both wired and wireless equipment.

F. Facilities used exclusively for providing unlicensed spread spectrum technology i.e. Bluetooth or WiFi, where the facility does not require a new Tower, where the service is not to be used for commercial purposes, where there is no fee or charge for the use of the service, and where the service is intended to be useable for less than 200 feet.

§142-5. Variances.

A. Variances from the requirements of this Chapter shall be considered by the Board subject to the notice and hearing requirements set forth in Article XXVI and XXVII of the Code of the Town of Hempstead. Any variances that may be

14

4854-6728-6566v.1 0048172-000592

necessary shall be identified in the Application for the installation of the Wireless Telecommunications Facility.

B. Nothing set forth in this Chapter shall be deemed to relieve any Applicant for the construction of a Wireless Telecommunications Facility from compliance with the requirements of the Town's Building Zone Ordinance.

## ARTICLE II
### STANDARDS FOR DESIGN AND PLACEMENT

§142-6.  Locational Considerations and Preferences.

A. While not a criteria for the issuance of a Special Use Permit, Applicants are encouraged to locate, site and erect said Facilities in order of the following preference list:

 (1)  On existing Towers or other structures on Municipal Properties, Municipal Facilities (exclusive of decorative light poles and clocks), and Public Rights of Way adjacent to commercially and industrially zoned areas.

 (2)  On existing Towers or other structures on commercially or industrially zoned property in the Town.

 (3)  On existing Towers or other structures on residentially zoned property in the Town.

 (4)  On new Towers on properties zoned for commercial or industrial use.

 (5)  On new Towers on properties zoned for residential use.

 (6)  On Town rights-of-way adjacent to residentially zoned areas.

B. The existence of a lease agreement or investments in studying one location shall not be considered as a valid reason to bypass a location of higher priority.

C. Except as otherwise set forth in Article IV of this Chapter, before locating an entirely new Facility in a residentially-zoned area, the Applicant must demonstrate that its Facility cannot achieve its intended purpose by

15

4854-6728-6566v.1 0048172-000592

being placed within or upon an existing Tower or other Wireless Telecommunications Facility, or within or upon a structure on Municipal Property (except for Public Rights of Way in residential areas), Municipal Facilities (exclusive of decorative light poles and clocks), or in a commercial or industrial zoning district. Such evidence is also required to support requests to locate new Wireless Telecommunications Facilities within a Sensitive Location, one hundred (100) feet of the boundary lines of property containing a public or private school or licensed day care center, or to erect a new Tower in lieu of installing the Facilities within or upon an existing Tower or structure.

D. Notwithstanding that a potential site may be situated in a location of highest available priority, the Town may disapprove an Application for any of the following reasons:

    (1)  Aesthetic impact on a historic landmark or historic district; and

    (2)  The availability and suitability of a less intrusive location based on the criteria in this Chapter, where such alternate location is determined to not adversely impair the Applicant's ability to provide Wireless Telecommunications services.

E. Prohibited locations. Wireless Telecommunications Facilities shall not be installed or mounted on municipally owned or controlled decorative lamp posts or clocks provided that the Applicant's ability to provide Wireless Telecommunications is not prohibited and unless the Applicant demonstrates that there exists no alternative technologically feasible means of providing the desired service. New equipment and utility poles shall not be installed in locations where they obstruct the visibility of vehicular, bicycle, or pedestrian traffic and shall not screen traffic control signs and signals from view.

F. Principal and accessory use. Wireless Telecommunications Facilities may be considered either principal or accessory uses, in that the prior existence of a different use on the same lot shall not preclude the installation of an Antenna or Tower on such lot.

§142-7. Criteria for Review. The following factors shall be considered for all Applications to locate Wireless Telecommunications Facilities.

16

4854-6728-6566v.1 0048172-000592

A. Due consideration shall be given to the Town's Comprehensive Plan, existing land uses and development, environmentally sensitive areas, and other appropriate factors in approving the issuance of a special use permit or other Town approval for the siting of Wireless Telecommunications Facilities.

B. The Board shall give due consideration to the following factors where applicable.

(1) Height, size, condition, stability, and appearance of the proposed or existing Facility, structure, pole, or device, with due consideration given to the applicable zoning district.

(2) Proximity of the proposed use to residential structures and residential district boundaries.

(3) Nature of existing and/or proposed uses on adjacent and nearby properties.

(4) The topography of the site and surrounding areas.

(5) Surrounding tree coverage and foliage.

(6) Design and aesthetic appearance of the structure, Facility, or device, with particular reference to design elements that have the effect of reducing or eliminating visual obtrusiveness.

(7) The proposed ingress and egress for construction and maintenance.

(8) Availability of suitable existing uses or structures or poles.

(9) Whether the proposed Wireless Telecommunications Facility, or its location, will impede or obstruct vehicular or pedestrian travel, obstruct or interfere with traffic control signs and signals, creates a nuisance or hazard, and/or substantially detracts from a historic landmark, scenic or visual space or corridor, or a culturally significant resource.

(10) Any other relevant factor under statutory and decisional law, and regulatory agency rulings.

17

4854-6728-6566v.1 0048172-000592

C. Unless the Board determines that a new Wireless Telecommunications Facility will be less intrusive than an existing structure, or based upon other considerations is better suited, no Application shall be granted unless the Applicant demonstrates to the reasonable satisfaction of the Board that no existing Facility or structure can accommodate the Applicant's proposed installation. Such evidence may consist of any or all of the following:

(1) That no other suitable lawfully and Permitted existing structures or Wireless Telecommunications Facilities are available for Collocation within the geographic area which meet the Applicant's engineering requirements without which the Applicant's ability to provide Personal Wireless Telecommunications Services would be materially inhibited.

(2) That the fees and costs charged, or contractual provisions required by the owner of an existing Facility or structure in order to share it, or adapt it for sharing, are unreasonable or Commercially Impracticable.

D. The Applicant must demonstrate a good faith effort to locate the Facility in the least intrusive location on the property or structure, in a manner that preserves the character and aesthetics of the area by maximizing the use of site configurations, building materials, and design to blend the project in with the surrounding area.

E. The Applicant must establish that without the proposed Facility, its ability to provide Personal Telecommunications Services would be materially inhibited. In determining whether the ability to provide Personal Telecommunications Services would be materially inhibited, the Board must find that the gap in service or need for Densification exists and can only be remedied by the location of the proposed Antennas, DAS system, or Tower. Such evidence shall include documentation of the coverage area of existing Facilities within the area in which the Applicant contends there exists a Gap in Service or need for Densification to be served by the proposed Facility. In determining what constitutes substantial remediation of a Gap in Service or Densification, and to what extent an Applicant needs to locate a Facility at a specific location

18

4854-6728-6566v.1 0048172-000592

or Height, and what level of service is to be made available to users, the Board shall be guided by standards set or as interpreted by federal or state law, decisional law and regulatory agencies.

§142-8.    General aesthetic requirements. All Wireless Telecommunications Facilities shall comply with the following requirements, unless otherwise required by the FAA, FCC or other applicable authority:

A. Color. All Wireless Telecommunication Facilities shall be of a neutral color or such other color(s) as the Board may require to reduce the visual impact to surrounding areas. If an Antenna is installed on a structure other than a Tower, it and its supporting electrical and mechanical components must be of a color that is identical to or closely compatible with the color of the supporting structure so as to render it as visually unobtrusive as practicable.    Whenever feasible, Antennas on top of a building shall be placed in a location where they are not visible from street level.

B. Design. All Wireless Telecommunication Facilities shall, to the extent feasible, use materials, colors, textures, screening and landscaping that will blend them into the natural setting and surrounding buildings.

C. Lighting. The Facility shall not be artificially lighted. If required by safety codes, the Federal Aviation Administration, or as expressly authorized by the Board for good cause shown by the Applicant, lighting shall be designed to minimize to the maximum extent practicable the resultant disturbance to the surrounding views and properties.   Any Person who commits an offense against the provisions of this section shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

D. Signs.    The Facility shall not bear any signs or advertising devices other than legally required certifications, warnings, or other required seals or signage, or as expressly authorized by the Board for good cause shown by the Applicant. Any Person who commits an offense against the provisions of this section shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

19

4854-6728-6566v.1 0048172-000592

E. Screening.   To the extent feasible, Towers, equipment enclosures, and generator enclosures shall be landscaped with vegetation and/or fencing sufficient to screen the view of such uses from surrounding property, and to maintain the aesthetic quality of the surrounding community.

F. Preservation of site. Existing mature tree growth and natural landforms and topography at the site shall be preserved to the maximum extent possible.

G. Stealth and Concealment. Where Antennas or other equipment cannot comply with these aesthetic requirements and would be easily visible from street level around the installation, the Board may require that solid opaque panels of sufficient size be installed to shield the equipment from view.  No material that affects the ability of the Antennas to function will be required. Concealment may also be required on properties occupied by or adjacent to historic sites, schools, and houses of worship.   The Stealth material should comply with the color and design standards in this chapter.

§142-9.   Specific Locational Aesthetic Requirements.   All Wireless Telecommunications Facilities in the following specified areas shall be designed and constructed in order to minimize the visual and audible impact on the surrounding areas.  Unless the use of such design features would impair the ability of the Facility to provide Wireless Telecommunications services or is Commercially Impracticable, all Wireless Telecommunications Facilities shall utilize Collocation and Stealth Technology consistent with the prevailing natural and architectural features in the area in which the Facility is to be constructed or modified.  In order to comply with these standards, all Wireless Telecommunications Facilities shall be consistent with the following standards.

A.    Residential  Zoning  Districts.  Facilities  to  be constructed in any residential zoning district or within one hundred (100) feet of a residential zoning district within the Town shall comply, to the extent permitted by existing technology, with the following criteria:

   (1) All Facilities installed on utility poles, including any electric meter required to provide service to the Facility, shall be painted a solid, flat color to match

20

4854-6728-6566v.1 0048172-000592

the color of the utility pole and minimize the visual impact on the surrounding area.

(2) In the event there is no existing utility pole or alternative structure in the area in which the Applicant proposes to construct and install the Facility, the Applicant shall construct and install the Facility utilizing Stealth Technology if directed by the Board. Stealth poles shall consist of an opaque "clamshell" or similar type base approved by the Board, in which all related equipment, including any associated electrical meter, is fully contained inside the pole. Such Stealth Technology Wireless Transmission Facilities shall be painted a solid, flat color to minimize the visual impact of the Facility on the surrounding area.

B. Sensitive Locations. Facilities to be constructed in Sensitive Locations shall comply with the following criteria: The Applicant shall construct and install the Facility utilizing Stealth Technology if directed and approved by the Board. Such Stealth Technology may include but shall not be limited to poles shall consist of an opaque "clamshell" or similar type base approved by the Board, in which all related equipment, including any associated electrical meter, is fully contained inside the pole provided same does not materially inhibit the Applicant's ability to provide Wireless Telecommunications Services. Such Stealth Technology Wireless Telecommunications Facilities shall be painted a solid, flat color to minimize the visual impact of the Facility on the surrounding area.

§142-10.  Noise.  At no time shall equipment noise (including chilling units, cooling fans, and backup generators or other power supplies) from any installation exceed the applicable requirements of the Town noise ordinance, and federal and state statutory requirements, whichever is stricter, at the site of the installation. Any Person who commits an offense against the provisions of this section shall be deemed to be in violation of this Chapter and the Unreasonable Noise Code in Chapter 144, or successor law.

§142-11.    Building  Permit  and  Special  Use  Permit Requirements.

A. Except as otherwise expressly provided herein, no Person shall site, place, build, construct, or modify any Wireless

21

4854-6728-6566v.1 0048172-000592

Telecommunications Facility without having first obtained a Special Use Permit and any and all other approvals or permits required herein or under other applicable law. In addition to all required permits, no Person shall site, place, build, construct or modify any Wireless Telecommunications Facility without, if applicable, having first obtained a Special Use Permit from the Board and certificates of occupancy/completion and/or other necessary approvals for each node, Antenna, piece of equipment or structure to be installed.

B. The Board, pursuant to its authority and the criteria under Article 16 of the Town Law, Article XXVII of the Town's Building Zone Ordinance, and this chapter, and subject to the federal Telecommunications Act of 1996, as modified, and any other applicable state or federal law, shall review, analyze, evaluate and make all determinations relevant to the issuance, denial or revocation of Special Use Permits for Wireless Telecommunications Facilities.

C. All applications for a Special Use Permit or other approval under this chapter shall commence with an application for a building permit and be administered by the Department of Buildings under the requirements of Chapter 86 of this Code and Article XXVI of the Town's Building Zone Ordinance. The Board's procedures shall be as provided in Article 16 of the Town Law and Article XXVII of the Building Zone Ordinance.

## ARTICLE III
## STANDARDS FOR TOWERS

§142-12. Tower Requirements. In addition to the requirements in Article II, all Towers shall be subject to the following:

(a) Distance between Towers. The minimum distance between Towers shall be five thousand (5,000) feet, measured by drawing or following a straight line between the base of any existing like use and the base of the proposed use, delineated on a map or site plan. Said distance requirement may be reduced by the Board only after a finding that a specific Application merits a reduction and closer siting due to reception and/or transmission limitations caused by topographical interference, avoidance of residential neighborhoods.

22

4854-6728-6566v.1 0048172-000592

(b)  Towers shall be set back from any adjoining residentially zoned or residentially used lot line a distance equal to at least one hundred twenty-five (125%) percent of the Height of the Tower, and this requirement may be varied only if the Board finds that the relaxation of this standard will not create an unsafe condition, or increased aesthetic impact, or is necessary to provide wireless telecommunications service(s). In addition, all Applicants shall demonstrate that the Tower is designed to fall within the located property to the extent technically feasible and away from any building.

(c)  All proposed Tower Applications shall contain a demonstration that the Facility will be sited so as to minimize visual intrusion, given the facts and circumstances involved and to the extent feasible and will thereby have the least adverse visual effect on the environment and its character, and on the residences in the area of the Wireless Telecommunications Facility. The Applicant shall show on the site plans or describe in writing how it shall effectively screen from view the base of the Tower and all related equipment, including generators, and structures of the proposed Wireless Telecommunications Facility. Landscaping and Stealth Technology may be required where feasible as described in §142-8 and §142-9.

(d)  At the request of the Board, the Applicant shall submit documentation justifying the total Height of any Tower requested and the basis thereof. The documentation may include propagation studies at the requested Height and at least two intervals of twenty (20') feet lower in Height to support the request for the proposed Height.

(e)  Security fencing. Such uses shall be surrounded by security fencing not less than eight (8) feet in height (unless otherwise limited by the Town's Building Zone Ordinance) and shall be equipped with appropriate anticlimbing devices, where applicable.

(f)  All utilities at a Tower site shall be installed underground whenever feasible and in compliance with all laws, ordinances, rules, and regulations of the Town, including specifically, but not limited to, the 2020 New York State Uniform Fire Prevention and Building Code and the 2017 National Electrical Code, or successor laws as adopted by New York State, where appropriate.

23

4854-6728-6566v.1 0048172-000592

(g) All Towers shall be constructed in accordance with ANSI/TIA-222-H or successor standards. All Applications for the construction of a new Tower or for a Co-location or Modification of an existing Tower shall include a certification from a licensed engineer that the Tower shall be constructed and maintained in accordance with the standards set forth in ANSI/TIA-222-H or any version hereinafter amended. Such certificate shall not be required if (a) a current assessment has already been submitted to the Town pursuant to subsection 142-12(h), or (b) an applicant submits a current assessment pursuant to subsection 142-12(h).

(h) The owner of the Tower shall, not less than every three (3) years for guyed masts or five (5) years for self-supporting Structures, provide and file with the Town's Department of Buildings a maintenance and condition assessment signed by a licensed engineer attesting to the Tower's compliance, with all requirements of ANSI/TIA-222-H or any version hereinafter amended.

§142-13. Additional standards for new Towers and all Towers Increasing in Height. The following additional standards shall be applied unless the Application is an Eligible Facilities Request:

A. New Towers shall be structurally designed to accommodate at least three (3) additional Antenna Arrays equal to those of the Applicant and located as close to the Applicant's equipment as possible without causing interference. The requirement may be waived, provided that the Applicant, in writing, demonstrates that the provisions of future shared usage of the Tower is not technologically feasible, is Commercially Impracticable, or creates an unnecessary and unreasonable burden, based upon:

1. The ability to comply with ANSI/TIA-222-H or successor construction standards;

2. The kind of Wireless Telecommunications Facility site and structure proposed;

3. The number of existing and potential FCC licenses without Wireless Telecommunications Facilities spaces/Sites;

24

4854-6728-6566v.1 0048172-000592

4. Available space on existing and approved Towers.

B. The owner of a proposed new Tower, and his/her successors in interest, shall negotiate in good faith for the shared use of the proposed Tower by other Wireless service providers in the future, and shall:

1. Respond within a reasonable amount of time to a request for information from a potential shared use Applicant;

2. Negotiate in good faith concerning future requests for shared use of the new Tower by other Telecommunications providers;

3. Allow shared use of the new Tower if another Telecommunications provider agrees in writing to pay reasonable charges. The charges may include, but are not limited to, a pro rata share of the cost of site selection, planning, project administration, land costs, site design, construction, and maintenance financing, return on equity, less depreciation, and all of the costs of adapting the Tower or equipment to accommodate a shared user without causing electromagnetic interference.

4. Failure to abide by the conditions outlined above may be grounds for revocation of the special use permit or other approval issued by the Town.

C. If a new Tower or Modifications increasing the Height of an existing Tower is proposed, the Applicant shall furnish a Visual Impact Assessment, which shall include:

(1) A computer generated "Zone of Visibility Map" at a minimum of one mile radius from the proposed structure, with and without foliage to illustrate locations from which the proposed installation may be seen.

(2) Pictorial representations of "before and after" (photo simulations) views from key viewpoints surrounding the proposed site. Provide a map showing the locations of where the pictures were taken and identify the distance between such locations and the proposed structure.

25

4854-6728-6566v.1 0048172-000592

ARTICLE IV
ELIGIBLE FACILITY REQUESTS
AND SMALL WIRELESS FACILITY APPLICATIONS

§142-14.   Applications for Eligible Facility Requests and Small Wireless Facilities.

A. An Application for proposed work qualifying as either an Eligible Facility Request or a Small Wireless Facility shall be made to the Department of Buildings and shall include the appropriate fee.  The Department of Buildings shall, upon receipt of such an Application, promptly review said Application to confirm that the proposed work qualifies as an Eligible Facility Request or a Small Wireless Facility.  All Applications shall include the following Application materials:

(1)  A statement of the nature of the Wireless Telecommunications Facility and a description of its compliance with Town, State, and Federal requirements and recommendations.

(2)  A written statement of why the Application qualifies as an Eligible Facilities Request or Small Wireless Facility.

(3)  A completed Application form, including any required Disclosure Certification forms as adopted by the Town for the Application.

(4)  A completed application for a Building Permit.

(5)  A site plan drawn to scale, which shall include:

(i)  For Eligible Requests:

a. The postal address and tax map parcel number of the property.

b. The Zoning District in which the property is situated.

c. The location, size and height of all existing and proposed structures on the property which is the subject of the Application.

26

4854-6728-6566v.1 0048172-000592

d. The location of any proposed Towers, Antennas, equipment cabinets, and generators, and all related fixtures, structures, appurtenances, and apparatus, including a labeling of dimensions and setbacks, materials, colors, and lighting.

A photograph, photograph simulation, or architectural drawing to demonstrate the appearance of the proposed Facility to determine whether the proposed Facility would defeat any existing stealth elements of the Structure.

(ii) In addition, the following shall be required for applications involving Small Wireless Facilities

e. Size of the property stated both in square feet and lot line dimensions, and a survey showing the location of all lot lines.

f. Size of the property stated both in square feet and lot line dimensions, and a survey showing the location of all lot lines.

g. The azimuth, size and center-line Height location of all proposed and existing Antennas on the supporting structure.

h. Delineation of all distances between the proposed use and all adjoining residentially zoned or residentially utilized properties, and the distance between the nearest boundary line of any Sensitive Locations and the Facility at issue if the distance is five hundred (500) feet or less.

i. A photograph, photograph simulation, or architectural drawing to demonstrate the appearance of the proposed Facility.

(6) If new Antennas are proposed, a report verifying that the Wireless Telecommunication Facility will be in full compliance with the current FCC RF Exposure guidelines. This report shall show the anticipated radiofrequency emissions of the proposed Antenna installation combined with all existing Antennas on the site, in comparison to FCC guidelines at ground level and at same-Height exposure, if applicable, for general population standards.

27

(7) If new Antennas are proposed, a statement containing the following information: (a) frequency of transmitting equipment; (b) actual intended transmission power stated as the maximum effective radiated power (ERP) in watts; (c) that an attached copy of the FCC license for the intended use of the Telecommunication Facilities is a true and complete copy; and (d) the number, type and model of the proposed Antenna(s) with a copy of the specification sheet.

(8) Any additional documents, studies and specifications requested by the Department of Buildings during the review process.

B. The Department of Buildings shall determine whether the proposed work or Modification to existing Wireless Telecommunications Facilities or new installations qualifies as an Eligible Facility Request or a Small Wireless Facility. In rendering its determination, the Department of Buildings shall consider whether there will be a Substantial Change, or the adequacy of the structure to support the proposed Modification, or there are visible changes that would require review based on aesthetic considerations. However, the Department of Buildings may only review and consider aesthetic considerations to the extent permitted by federal law. In particular, the Department of Buildings may not review aesthetics for an Eligible Facilities Request except for the sole purpose of determining whether the proposed Eligible Facilities Request defeats the existing stealth elements of the Base Station or Tower. Changes to the color or the addition of artificial illumination of a facility may be deemed to defeat the stealth elements of the Base Station or Tower unless required for safety or by State or federal law. A joint Application for the same type of Modification to multiple Sites may be made provided a separate Application fee is paid for each Site subject to the provisions of this Chapter and in accordance with Federal law.

C. In the event that the Commissioner determines that due to the circumstances of the specific Application, the staff of the Department of Buildings is unable to render a determination as to (i) whether the Application constitutes an Eligible Facilities Request or a Small Wireless Facility, or (ii) the Application involves factors which are beyond the capability of the Department of Buildings

28

to review, he/she may require the retention of Consultants, at the Applicant's expense, to assist it in its determination. In such event, the Commissioner shall designate the Scope of Work to be performed by the Consultant and may require the Applicant to deposit with the Town's Comptroller an amount based on the Consultant's Scope of Work, to be held to pay the fees of the Consultant. In the event that the Consultant's review exceeds the amount of the escrow, and the Commissioner determines that further Consultant review is required, the Consultant shall provide an amended Scope of Work, after which the Applicant may be required to replenish the escrow. Any monies that are not expended to pay the Consultant shall be promptly refunded to the Applicant at the conclusion of the Application process. The review of the Application may include a physical inspection of the site or facility.

D. If a request to classify an Application as an Eligible Facility or a Small Wireless Facility is denied, the fee paid for the review may be applied towards a new Application for the standard approval before the appropriate Department or Board.

E. If a request to classify an Application as an Eligible Facility or Small Wireless Facility is approved, no Board approval in accordance with Articles II, III, V, VI, VII, and VIII of this Chapter will be required, except that proof of compliance with the insurance requirements set forth in §142-19 shall be provided. Further, in the event that a request involves the Collocation of equipment by an Applicant on Municipal Property, a Municipal Facility, or the Public Right-of-Way which has not previously entered into a License Agreement, the Applicant shall enter into a License Agreement authorizing the use of the Municipal Property, Municipal Facility, or Public Rights-of-Way, and pay an appropriate license fee to the Town. With respect to Small Wireless Facilities, Applicants will still have to demonstrate compliance with the design standards of Article II of this Chapter.

F. Other necessary approvals. Eligible Facilities and Small Wireless Facilities are subject to the filing of Applications for and issuance of building permits, certificates of occupancy/completion, highway roadway opening permits, and other approvals, as is applicable to each such installation. The Applicant shall pay all required fees and charges for such approvals as established

29

by the Board or local law. Any Person who fails and/or neglects to file an Application and secure all other necessary approvals and permits before the commencement of work shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

ARTICLE V
PUBLIC LANDS AND STRUCTURES

§142-15.  Municipal Facilities, Municipal Property and Public Rights-of-Way (License Agreement).

A. Municipal Facilities and Municipal Property. No Wireless Telecommunications Facilities shall be constructed or installed on any public lands or structures until such time the Applicant has entered into a License Agreement with the Town. Requests for a License Agreement to erect, install, attach, deploy, operate, maintain, alter, or modify Wireless Telecommunications Facilities in, over or upon Municipal Facilities, Municipal Property or public rights-of-way shall be determined solely by the Town Board, as owner thereof.

B. Public Rights-of-Way.

(1) Requests for a License Agreement to (a) erect, install, attach, deploy, operate, maintain, alter, or modify Wireless Telecommunication Facilities in or along the Rights-of-Way on specific poles, streetlights, stanchions and other similar structures owned by the Town, utility companies or other entities; or (b) to install utility poles, boxes, cabinets, equipment or other structures on or partially below ground level at specific locations along the Public Rights-of-Way, shall file an Application with the Town Board, for a License Agreement which shall have jurisdiction to review and approve said request for a License Agreement.

(2) Except in those instances where the proposed modification constitutes an Eligible Facilities Request, subsequent Applications to locate or install additional equipment or structures, or to Modify existing installations along the Public Rights-of-Way as described herein once a License Agreement is in place shall continue to be determined by the Board.

30

4854-6728-6566v.1 0048172-000592

The Board may grant or deny an Application, in whole or in part, with or without conditions, as it deems advisable in accordance with state and federal law.

C. Any Person who fails and/or neglects to file an Application for a License Agreement, and secure all other necessary approvals and permits before the commencement of work shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

§142-16.  Application requirements. An electronic copy of all documents must be filed with the Town's Department of Buildings pursuant to the regulations of the department.  A non-refundable Application fee and refundable escrow fee in amounts established by the Town Board shall accompany the Application and filed with the Department of Buildings. The Application fee shall be tripled in all cases where installations have been made or work commenced without the necessary Town approvals or permits. The Department of Buildings shall forward copies of the Application to the Board, and where applicable to the Commissioner of the Department of Highways. The Board may refer an Application to other Town agencies or departments for recommendations on any issue it deems necessary and proper. Such referral shall specify the reasons for the referral.

§142-17.  Public hearing; notice.

All requests for a License Agreement before the Town Board shall be determined after a public hearing.

§142-18.   Town Board action on license applications.  An application for a License Agreement may be approved or denied, in whole or in part, with or without conditions in accordance with state and federal law.  If the application is approved, in whole or in part, a License Agreement shall be authorized and shall contain the term of the license; conditions on the use or occupation of the property or structure(s), including separate compensation, where applicable, for the use of public rights-of-way, municipal facilities, and municipal property; provisions for construction and/or performance bonds; indemnity and insurance; obligations concerning areas disturbed during construction, installation, attachment or maintenance activities; submission of annual inventory reports showing the exact location of all installations; conditions on transfer or assignment; and such other conditions consistent with the requirements and intent of

31

this chapter that ensures that the Applicant's use or occupation of public property minimizes disruption to the public, adheres to all applicable laws, and promotes safe, effective and efficient use of Town resources.

§142-19.   Conditions of approval.   In addition to any other condition or restriction the Town Board deems necessary or advisable under the circumstances, all approvals, as set forth below, shall include the following conditions, whether approved by a Board or by operation of law, and whether or not same is set forth in the Resolution approving the license application.   Any Person who fails and/or neglects to comply with the conditions of approval shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

A. Public Rights-of-Way.  In cases where installations are proposed for along the ground or partially below the ground of the Public Rights-of-Way, or on poles, streetlights, and stanchions owned by the Town or by one other than the Town along the Public Rights-of-Way, the following shall apply.

    (1)  Indemnification. To the fullest extent permitted by law, and whether or not the facilities being approved are wired or wireless, the Applicant and any successors and assigns, shall indemnify and hold harmless the Town, its Board, public officers, employees, servants and agents, from and against any liability, claims, suits, actions, administrative and regulatory proceedings, losses, expenses and costs of any kind, whether actual, alleged, or threatened, including but not limited to actual attorney fees, litigation expenses and court costs of any kind without restriction or limitation, incurred in relation to, as a consequence of, arising out of or in any way attributable to the existence, maintenance, location, configuration, design, installation, or operation of the Wireless Telecommunications Facility, the issuance of any municipal approval by the Town or Board, or arising out of the obligations of the parties under the License Agreement, except for the gross negligence or willful acts of the Town, as the case may be, their public officers, employees, servants, and/or agents. The Applicant shall pay such obligations as they are incurred by the Town and/or the Board, Town Board, their public officers,

32

employees, servants, and/or agents, and in the event of any claim or lawsuit, shall submit a deposit in such amount as the Town reasonably determines necessary to protect the Town, the Board, officials, employees, servants and/or agents from exposure to fees, costs, attorney fees, or liability with respect to such claim or lawsuit. If any provision of the License Agreement or resolution approving the Application shall conflict with the provisions of this subsection, then in such event, the provisions of this subsection shall control; and

(2)  Height. To the fullest extent permitted by law, no pole, mast, or mount and all attached equipment, including Antennas, exceeding 50 feet in Height above ground level shall be installed or located within the Public Rights-of-Way; and

(3)  Compliance with law. The Applicant shall comply with all applicable provisions of the Town Code, the License Agreement, any permit or approval issued pursuant to this Chapter, and all other applicable federal, state and local laws, rules and regulations. Any failure of the Town to enforce compliance with such approval or any applicable law, rule or regulation shall not relieve the Applicant of its obligations under the code, the License Agreement, any permit or approval issued, or other applicable law; and

(4)  Verification of data. The owner of the site or pole, the Applicant and operator of the facility or equipment shall cooperate with the Town to (a) verify that the facility design conforms to relevant building, maintenance, landscaping and safety requirements and specifications; and (b) verify that the facility complies with the applicable provisions of the Town Code and federal and state rules and regulations.

(5)  Proper  maintenance.  All  Wireless Telecommunications Facilities shall be maintained in a safe and proper manner. Any Person who commits an offense against the provisions of this section shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

33

4854-6728-6566v.1 0048172-000592

B. Municipal Property and Municipal Facilities. In cases where installations are proposed on Municipal Property or Municipal Facilities, the following shall apply.

(1) Indemnification. To the fullest extent permitted by law, and whether or not the facilities being approved are wired or wireless, the Applicant and any successors and assigns, shall indemnify and hold harmless the Town, its Board, public officers, employees, servants and agents, from and against any liability, claims, suits, actions, administrative and regulatory proceedings, losses, expenses and costs of any kind, whether actual, alleged, or threatened, including but not limited to actual attorney fees, litigation expenses and court costs of any kind without restriction or limitation, incurred in relation to, as a consequence of, arising out of or in any way attributable to the existence, maintenance, location, configuration, design, installation, or operation of the Wireless Telecommunications Facility, the issuance of any municipal approval by the Town or Board, or arising out of the obligations of the parties under the License Agreement, except for the gross negligence or willful acts of the Town, the Board, the Town Board, or as the case may be, their public officers, employees, servants, and/or agents. The Applicant shall pay such obligations as they are incurred by the Town and/or the Board, the Town Board, their public officers, employees, servants, and/or agents, and in the event of any claim or lawsuit, shall submit a deposit in such amount as the Town reasonably determines necessary to protect the Town, the Board, officials, employees, servants and/or agents from exposure to fees, costs, attorney fees, or liability with respect to such claim or lawsuit. If any provision of the license agreement or resolution approving the Application shall conflict with the provisions of this subsection, then in such event, the provisions of this subsection shall control; and

(2) Compliance with law. The Applicant shall comply with all applicable provisions of the Town Code, the License Agreement, any permit or approval issued pursuant to this Chapter, and all other applicable federal, state and local laws, rules and regulations.

34

4854-6728-6566v.1 0048172-000592

Any failure of the Town to enforce compliance with such approval or any applicable law, rule or regulation shall not relieve the Applicant of its obligations under the code, any permit or approval issued, or other applicable law; and

(3) Verification of data. The owner of the site or pole, the Applicant and operator of the facility or equipment shall cooperate with the Town to (a) verify that the facility design conforms to relevant building, maintenance, landscaping and safety requirements and specifications; and (b) verify that the facility complies with the applicable provisions of the Town Code and federal and state rules and regulations.

(4) Proper maintenance. All Wireless Telecommunications Facilities shall be maintained in a safe and proper manner. Any Person who commits an offense against the provisions of this section shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

§142-20.  Insurance Requirements.

A. An owner and/or operator of a Wireless Telecommunications Facility on Municipal Facilities, Municipal Property and Public Rights-of-Way shall secure, and at all times maintain, in full force and effect, insurance coverage as set forth below:

(1) Commercial General Liability Coverage: covering bodily injury, personal injury, property damage, public disputes, libel, slander, and other events related to their products and operations with limits of no less than $2,000,000 per occurrence/$2,000,000 in the aggregate. Said coverage may not contain any electromagnetic frequency (EMF) exclusions; and

(2) Commercial Automobile Liability Coverage: with limits of no less than $1,000,000 per occurrence/ $2,000,000 in the aggregate; and

(3) Workers Compensation and Disability Insurance with limits of no less than $1,000,000, or in the statutory amount, whichever is greater; and

35

      (4)  Umbrella Liability Coverage with limits of no less than $5,000,000 per occurrence/$5,000,000 in the aggregate.

      (5)  Commercial Property Insurance with limits of no less than the value of all of the Owners' Property and Equipment including but not limited to cellular Towers, Antennas, and related equipment.

      (6)  Stand Alone Network Security/Cyber Liability Insurance with limits of no less than $5,000,000 per occurrence/$5,000,000 aggregate.

B. The Commercial General Liability Insurance Policy and Commercial Property Coverage shall specifically include the Town and its elected officials, officers, the Board and employees as additional insureds, by endorsement, and a copy of the endorsement shall be provided to the Town Attorney's Office, as respects any covered liability arising out of or in connection with the issuance of a License Agreement or other approval by the Town, the performance of the work, the installation, maintenance and operation of its Wireless Telecommunication Facility, and its use and occupancy of the Public Rights-of-Way, Municipal Property, and Municipal Facilities. Coverage shall be in an occurrence format and in accordance with the limits set forth herein. Claims-made policies are not acceptable.

C. All policies shall be on a form acceptable to the Town Attorney. All insurance providers shall be authorized to do business in the State of New York and shall carry a minimum rating assigned by A.M. Best & Company's Key Rating Guide of at least "A VII" overall.

D. The insurance shall not be canceled, non-renewed, or any material change made by the owner or operator of the Wireless Telecommunication Facility, nor shall the required occurrence or aggregate limits be reduced during the term of the License Agreement, or while the installation is in place, unless approved by the Town Attorney in writing. The owner or operator shall be responsible for notifying the Town in writing of any cancellation, non-renewal, or material change at least thirty (30) business days prior to such action and for non-payment of premium at least ten (10) business days prior

36

to such cancellation. The failure of such Person(s) to maintain in good standing the coverages and insurance policies set forth herein during the term of the license agreement, or while the installation is in place, or to notify the Town of any proposed cancellation shall be deemed a violation of this chapter.

E. Renewal or replacement policies or certificates shall be delivered to the Town at least fifteen (15) business days before the expiration of the insurance that such policies are to renew or replace. The certificate(s) of insurance shall be mailed with the payments required to be made, if applicable, pursuant to the License Agreement to the attention of the Town Comptroller and Town Attorney.

F. The owner/operator shall pay all premiums and deductibles applicable to its insurance policies.

G. All coverage shall be primary and non-contributory to the Town, the Board, and the Town Board of Trustees, its elected officials, officers, and employees.

H. The Applicant and the owner/operator of the Wireless Telecommunications Facility shall remain fully informed of all municipal ordinances and regulations, State and Federal Laws in any manner affecting the work or goods herein specified, and any extra work contracted by the Contractor and shall at all times observe and comply with said ordinances, laws, and regulations, including all applicable provisions of the Workers' Compensation and Labor Laws. The owner/operator agrees to defend, indemnify, and hold the Town, the Board, the Town Board of Trustees, its officers, agents, and employees harmless from any liability and attorney's fees, imposed upon or incurred by the Town, its officers, agents, and/or employees arising from the negligence, gross negligence, recklessness, malpractice, or intentional tort of the contractor including any Action Over Claims. Other necessary approvals. Subject to the provisions of this Chapter, all Wireless Telecommunications Facilities approved for installation are subject to the filing of an Application for and issuance of building permits and certificates of occupancy/completion, or other necessary approvals for each node, Antenna, piece of equipment or structure to be installed. The installation of new poles, streetlights, stanchions and other similar structures, or ground-mounted equipment and structures in Public Rights-of-Way shall also

37

4854-6728-6566v.1 0048172-000592

require road opening permits from the Town's Department of Highways. The Applicant shall pay all required fees and charges for such approvals. Any Person who fails and/or neglects to file an Application and secure all other necessary approvals and permits before the commencement of work shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

## ARTICLE VI
### PRIVATE LANDS AND STRUCTURES

§142-21. Privately-Owned Property. Applications to erect, install, attach, or Modify Wireless Telecommunications Facilities on privately-owned parcels and structures shall require a Special Use Permit issued by the Board, unless exempted under §142-3 or classified as an Eligible Facility or Small Wireless Facility under Article IV of this Chapter. New Towers shall be subject to the provisions of Article III of this Chapter. Any Person who fails and/or neglects to file an Application for a building permit and/or a Special Use Permit and secure all necessary approvals and permits before the commencement of work shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

§142-22. Application requirements. Except as otherwise expressly provided herein, an Application to construct a Wireless Telecommunications Facility shall comply with all requirements of Chapter 86 of the Code of the Town of Hempstead, Article VIII of this Chapter and the requirements, rules and regulations of the Department of Buildings. All Applications shall be filed with the Department of Buildings along with a non-refundable Application fee and refundable Consultant Escrow deposit in accordance with § 142-25(F) herein.

A. Public hearing; notice. All Applications before the Board shall be determined after a public hearing conducted in accordance with the requirements of Articles XXVI and XXVII of the Building Zone Ordinance and Article 16 of the Town Law of the State of New York.

B. Applications for a Special Use Permit issued by the Board shall run concurrently with the Department of Buildings

38

review of the Application and shall be administered so that determinations can be made at approximately the same time to the extent practicable

§142-23.   Action on Applications. The Application can be approved or denied, in whole or in part, with or without conditions as deemed advisable by the Board in accordance with state and federal law. The Board shall have all of the powers vested in it by law. Any Person who fails and/or neglects to comply with the conditions of approval shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein.

§142-24.    Proper maintenance; compliance with law.    All Wireless Telecommunications Facilities shall be maintained in a safe and proper manner and shall be in compliance with all conditions of the Board's approval, building permit, as well as with all applicable Town, State and Federal laws, rules and regulations, without exception. Any Person who commits an offense against the provisions of this section shall be deemed to be in violation of this Chapter and shall be subject to the fines and penalties set forth herein. Any failure of the Town to enforce compliance with such approval or any applicable law, rule or regulation shall not relieve the Applicant of its obligations under the code, any permit or approval issued, or other applicable law.

ARTICLE VII
APPLICATION REQUIREMENTS

§142-25.   Except as otherwise provided in Article IV of this Chapter, applications for Wireless Telecommunications Facilities shall include the following documentation.  Where a certification is required, such certification shall bear the signature and seal of a Registered Professional Engineer licensed in New York State.

A. A statement of the reason for the new or modified Telecommunications Facility including the coverage and/or capacity justification, and a description of its compliance with Town, State, and Federal requirements and recommendations.

B. A completed application form, including any required Disclosure Certification forms as adopted by the Town for the particular application.

39

4854-6728-6566v.1 0048172-000592

C. A completed Environmental Assessment Form, Part I in accordance with SEQRA regulations.

D. Inventory of existing Wireless Telecommunications Facilities when a new site is proposed. An inventory of all existing like uses, or sites approved for like uses, that are located within one (1) mile, including specific information about the location of each Tower or DAS System, compiled from public records by the best efforts of the Applicant; the distance from the proposed new use as shown on the map or plan submitted with the Application; and the name of the owner/operator of each such use, as best as same can be ascertained. An inventory is not needed for Collocations or Modifications to existing sites.

E. A certification of the suitability or unsuitability of existing Towers or other structures and installations in the inventory. This certification is not needed for Collocations or Modifications to existing sites.

F. Application fee as set forth in Chapter 86-11(FF) and Consultant Escrow shall be paid by the Applicant to be utilized by the Town and the Department of Buildings, as necessary, to pay for the services of a Consultant(s) at the Applicant's expense to verify that the proposed Wireless Telecommunication Facility complies with the applicable state and federal laws and regulations and to advise the Town on any technical aspect of the Application pursuant to a Scope of Work. The Applicant shall submit to the Department of Buildings or other Town department for deposit into a non-interest-bearing trust and agency account maintained by the Town the amount of $7,500 to be utilized by the Town to pay for such services during the review process. The Consultant shall provide the Department of Buildings with copies of its monthly invoices for services rendered by e-mail transmission, with a copy by e-mail transmission to the Applicant. In the event the sum on deposit has a balance of less than 20% of the amount initially deposited by the Applicant, the Applicant shall, upon notice from the Town, deposit additional amounts so that the balance on deposit reaches at least 50% of the amount initially deposited. No further action or review of the Application shall be conducted until such balance is reached. After all reasonable charges have been paid to the vendor(s) by the Town, any balance remaining on deposit in the account shall be returned to the Applicant. In the event an Application is withdrawn at any stage by the

40

Applicant, any unused portion of the sums on deposit shall be returned to the Applicant.

G. A site plan drawn to scale meeting all the requirements contained in this Chapter and the Town Subdivision and Site Plan Regulations, which shall include:

(1)   The postal address and tax map parcel number of the property.

(2)   The Zoning District in which the property is situated.

(3)   Size of the property stated both in square feet and lot line dimensions, and a survey showing the location of all lot lines.

(4)   The location, size and height of all existing and proposed structures on the property which is the subject of the Application.

(5)   The azimuth, size and center-line Height location of all proposed and existing Antennas on the supporting structure.

(6)   The location of any proposed Towers, Antennas, equipment cabinets, and generators, and all related fixtures, structures, appurtenances, and apparatus, including a labeling of dimensions and setbacks, materials, colors, and lighting.

(7)   Delineation of all distances between the proposed use and all adjoining residentially zoned or residentially utilized properties, and the distance between the nearest boundary line of any Sensitive Location and the facility at issue if the distance is five hundred (500) feet or less.

H. A report verifying that the Wireless Telecommunication Facility will be in full compliance with the current FCC RF exposure guidelines for Maximum Permissible Exposure. This report shall comply with the FCC methodology as set forth in OET Bulletin 65 and Part 1 of Title 47 of the Code of Federal Regulations, as each may be amended or superseded.

41

4854-6728-6566v.1 0048172-000592

I. A statement containing the following information: (a) frequency, and class of service of radio or other transmitting equipment; (b) actual intended transmission power stated as the maximum effective radiated power (ERP) in watts; (c) that an attached copy of the FCC license for the intended use of the Telecommunication Facilities is a true and complete copy; and (d) the number, type and model of the proposed Antenna(s) with a copy of the specification sheet.

J. A photograph, photograph simulation, or architectural drawing to demonstrate the appearance of the proposed facility, from multiple angles and Heights for new Towers.

K. A certification establishing that the use meets the standards and regulations of the FAA, the FCC, and any other state or federal agency having jurisdiction. The certification shall indicate whether the Application is subject to FAA Regulation Part 77 or successor regulation and whether it requires lighting. If an FAA determination is required, then all documentation filed in connection with the Application must be provided.

L. The make, model, type, and manufacturer of the Tower (if proposed), along with any additional information required by Article III (Standards for Towers).

M. Documentation that demonstrates and establishes compliance with Article II (Standards for Design and Placement). Such documentation shall include propagation studies of the proposed site and all adjoining planned, proposed, in-service, or existing sites that demonstrate a Gap in Service or Densification.

N. The Applicant shall be required to submit a written report demonstrating its diligent efforts to secure shared use of existing Towers or the use of alternative buildings or other structures within the Town. Copies of written requests and responses for shared use shall be provided to the Town in the Application, along with any letters of rejection stating the reason for rejection.

O. Any relevant additional documents, studies and specifications requested by the Town during the review process.

42

4854-6728-6566v.1 0048172-000592

ARTICLE VIII
AUTHORITY OF THE BOARD

§142-26.  Authority of the Board.

A. The Board may as a condition of approval, propose the Applicant erect a structure at the Applicant's expense to house or screen the proposed Antenna and related equipment, as it deems necessary or desirable in accordance with the established guidelines in Article II of this Chapter.

B. The Board may propose a reduction in the Height of the proposed Tower, Antennas, or other Facilities and structures or make other Modifications to the proposed Wireless Telecommunication Facility for the purpose of making aesthetic improvements, if technically feasible.

C. The Board may refer an Application to other Town agencies or departments for recommendations on any issue it deems necessary and proper. Such referral shall specify the reasons for the referral.

D. The Board may retain a Consultant(s) at the Applicant's reasonable expense, where necessary, pursuant to a Scope of Work, to verify that the proposed Wireless Telecommunication Facility subject to this Chapter complies with the applicable state and federal laws and regulations and to advise the Board on any technical aspect of the Application. The review of the Application may include a physical inspection of the site or facility.

E. The Board may place special conditions or limitations on the approval of an application that include the following:

   (1) Location of principal and accessory structures.

   (2) Limitation on signs or advertising devices, including number, size, location, type, and illumination.

   (3) Limitation on amount, location, intensity, and direction of exterior illumination.

   (4) Amount, location, and improvement of off-street parking and loading spaces.

43

    (5)  Type, location, and design of drainage and drainage structures.

    (6)  Control of access and circulation within the premises.

    (7)  Grading and the location and type of retaining walls or structures.

    (8)  Landscaping, screening, fencing, and walls, including the location and types of plantings and fencing required for screening purposes.

    (9)  Structural changes.

    (10)  Control or elimination of smoke, dust, gas, noise, vibration, odor, and lighting.

    (11)  Other conditions applicable under New York State Zoning Laws found by the Board to be necessary.

§142-27.  Retention of outside Consultant(s) and independent studies.

A. As a condition of processing any matter over which it has jurisdiction, the Board may, where necessary, commission independent studies and retain a Consultant(s) at the Applicant's reasonable expense to verify that the proposed Wireless Telecommunication Facility complies with the applicable state and federal laws and regulations and to advise the Board on any technical aspect of the Application, as provided in § 142-24(F).

B. In its discretion the Board may adopt or reject, in whole or in part, the findings and determinations of any Consultant or study commissioned by the Board or the Applicant.

C. Nothing contained in this Chapter shall be deemed to relieve any Applicant from complying with all applicable sections of the Town Code and/or the Town's Building Zone Ordinance.

### ARTICLE IX
### DISPUTE RESOLUTION

44

§142-28.   Dispute Resolution.   In the event the Town has retained the services of a Consultant in connection with the review of any Application, upon completion of the application process and the issuance of all necessary permits and approvals, the Comptroller's Office shall, within sixty (60) days after the final invoice has been paid, prepare a final accounting of the Consultant Escrow for that project and refund to the Applicant any unused portion of the Consultant Escrow.

1. Upon receipt of the final accounting, the Applicant shall promptly review the accounting.  In the event the Applicant objects to the final accounting, the Applicant shall, not more than forty-five (45) days after receipt of the final accounting, serve upon the Town Attorney written notice, by certified mail, return receipt requested, a detailed description of its objection to the Consultant's fees and charges and/or the final accounting.  The objections shall specify the invoice date(s) and the particular line item(s) to which it objects and the basis for the objection.  Within forty-five (45) days after receipt of the Applicant's objections, the Town Attorney shall issue an administrative written decision determining the Applicant's objections. This written decision shall either (i) confirm the accounting and the amount of the refund/transfer, or (ii) reject and modify the accounting and the amount of the final refund/transfer.

2. In the event that the Applicant disputes the administrative decision of the Town Attorney it may contest said determination in a court of competent jurisdiction.

## ARTICLE X
## POST-APPROVAL MONITORING

§142-29.   Access to Wireless Telecommunications Facilities.

A. Unauthorized Access.  All Wireless Telecommunications Facilities shall be operated and maintained so as to prevent unauthorized access to and upon such facilities. Any owner or Person-in-charge of the property, an accessory facility or any Wireless Telecommunications Facility who

45

commits an offense against the provisions of this section shall be deemed to be in violation of this Chapter.

B. Continuing Compliance. The Town shall have access to Wireless Telecommunications Facilities upon notice of at least 48 hours for the purpose of verifying continuing compliance with this Chapter, and that the Facility is being operated and maintained in accordance with the terms of the License Agreements if applicable, and all permits and approvals. Notice shall be served upon the Applicant and/or operator of the Wireless Telecommunications Facility by overnight mail addressed to the Applicant and/or operator at its last known address.

§142-30. Revocation or suspension of certificates, permits and other approvals.

A. Existence of Violations. The Commissioner shall report to the Town Attorney, on behalf of the Town Board, if the Facilities are on Municipal Property, Municipal Facilities, or using the Public Rights-of-Way, or to the Board, if the Facilities are on private property, that the Facilities, or any part thereof, are not in compliance with the License Agreement or any permit or approval issued by the Board. The Commissioner, or his/her designee shall indicate that a Notice to Comply, Notice of Violation or summons, as the case may be, has been issued and there has been no compliance, or compliance has not been achieved to their satisfaction.

B. Special Use Permit approval. The Board may, upon notice and after a public hearing, revoke any special use permit granted by the Board if it determines that there are substantial violations of a condition of approval, or of a map or plan, or Special Use Permit, or variance, or if false documents or statements have been submitted in support of the Application, or if equipment is not functioning within expected parameters, or on such other grounds deemed appropriate by the Board.

C. License Agreement. The Town Board may terminate a License Agreement previously approved, upon notice and after a public hearing, if the Town Board determines that a substantial violation of the License Agreement, or of a map or plan, or of a Special Use Permit, or variance, or of any condition established by the Board has occurred, or if false documents or statements have been submitted in

46

support of the Application, or of equipment is not functioning within expected parameters or on such other grounds deemed appropriate by the Board.

D. Certificate of occupancy, permit or other approval. In the event that it is determined that any Wireless Telecommunications Facility is being operated or maintained in violation of Chapter, the Commissioner, or his/her designee may revoke or suspend a Certificate of Occupancy/Completion, permit or other approval for a Wireless Telecommunications Facility in accordance with the procedures set forth in Section 86-16 of the Town Code upon the following grounds:

    (1)  The Board has revoked their approval of the Facility or any part thereof; or

    (2)  The FCC has revoked the license of the Telecommunications provider; or

    (3)  The Department receives sufficient evidence to show that the Wireless Telecommunications Facility is violating FCC RF exposure standards; or

    (4)  The Facility or elements of the Facility fall into such a state of disrepair that the condition jeopardizes the health, welfare and safety of Persons or property, or creates a nuisance or danger

E. Notice of hearing.

    (1)  If the Board or the Town Board seeks action, written notice of the grounds for revocation of any License Agreement, certificate, permit, grant or other approval, and the date, time and place of a hearing before an Administrative Hearing Officer, shall be mailed to the private property owner; the Applicant who filed for the use or installation and owner or operator of the facility, system, or equipment; and their attorney, if known, to their last known address, by regular and certified mail, return receipt, requested at least fifteen (15) calendar days before the hearing.

    (2)  The notice shall also contain a statement that they are (a) entitled to be represented by legal counsel at the hearing; (b) they will be provided with an

47

4854-6728-6566v.1 0048172-000592

opportunity to be heard and may present the testimony of witnesses, experts, and other evidence in their own behalf; and (c) that upon their failure to appear at the hearing, then in such event, the determination of the Board or the Town Board as applicable, shall be final.

F. Hearing. All hearings shall be recorded and may be adjourned only upon good cause shown and at the discretion of the Person or entity holding the hearing.

(1)    Authority. At the hearing the Hearing Officer shall consider the evidence, and may adopt or reject, in whole or in part, any portion of the Board or the Town Board's determination, with or without conditions, as deemed advisable or necessary under the circumstances.

(2)    Upon a finding that the use or Facilities is in violation of the License Agreement, certificate, permit, grant or other approval, the Board or the Town Board, as applicable, may order the property owner, and/or the Applicant, operator and/or owner of the Facility to repair, remediate, rectify, demolish or remove any part of the Wireless Telecommunications Facilities in violation, within the time specified, and upon the failure, neglect, or refusal of such Person(s) to comply, may revoke its approval, in whole or in part. The decision of the Board is final as to the Town.

(3)    Administrative Hearing Officer. The Administrative Hearing Officer's findings and recommendations shall be filed with the Town Clerk and mailed to the party or entity which requested the hearing or their attorney(s), together with the holder of the Permit, approval and/or license that is the subject of the hearing, if known, with a copy to the Town Attorney, and to the Board or Town Board, as applicable.

(4)    If there has been no appearance at the hearing by the holder of the Permit, the resulting determination of the Hearing Officer shall be final and shall be served in the same manner as the Notice of Hearing. Once revoked, the use and its accessory uses or the specific approval, as is applicable, shall not be reestablished until all violation(s) are corrected to the satisfaction of the Town. Reestablishment of a grant will require a

4854-6728-6566v.1 0048172-000592

new Application subject to the requirements of this Chapter.

(5)    Liability for costs.  The private property owner, Applicant, or owner or operator of the Facility shall be jointly and severally liable for the payment of all costs and expenses the Town incurs for the abatement, repair, or removal of the Facilities and restoration of the site, if applicable, including legal fees and costs.

(6)    Recovery of costs. The costs incurred by the Town shall be certified by the Commissioner of each Town department providing services and the Town Attorney shall mail written notice of such costs by both regular mail and certified or registered mail, return receipt requested, to the property owner, Applicant, and owner or operator of the Facility, as the case may be. The notice shall state that upon the failure to pay the amount certified within thirty (30) calendar days of receipt of the notice by money order, or certified or bank check the amount will be added to the tax bill if permitted by law, or other action will be taken without further notice. Nothing contained herein shall be construed to limit the Town's remedies or bar the commencement of an action to collect the debt in lieu of a tax lien.

(7)    Tax lien. In the event the debt is not paid within the thirty (30) day period, or if the mailing is returned by the Post Office because of the inability to make delivery for any reason, as long as the notice was properly addressed to the last known address, such certification of costs shall be provided to the Tax Receiver, who shall cause the costs as shown thereon to be charged against such lands and/or facilities (if permitted by law) without further notice. The amount so charged shall forthwith become a lien against such lands and/or facilities and shall be added to and become part of the taxes next to be assessed and levied, the same to bear interest at the same rate as taxes, and shall be collected and enforced by the same officer(s) and in the same manner as taxes.

(8)    §142-31. Violation. Any Applicant, owner or Person-in-charge of property, an accessory facility or any Wireless Telecommunications Facility who fails or neglects to abide by a revocation or suspension order,

49

or a termination of the license agreement shall be deemed to be in violation of this Chapter.

ARTICLE XI
ABANDONMENT OF FACILITIES

§142-32.  Abandonment.  It shall be a rebuttable presumption that any such Wireless Telecommunications Facility that has not been in operation or use for more than ninety (90) continuous days or a total of one hundred-eighty (180) days in any three hundred sixty-five (365) day period shall be deemed abandoned, and the private property owner or Applicant who filed for the use or installation of the system or equipment, and the operator or owner of the system or equipment shall be responsible for removal of all structures and facilities within one hundred twenty (120) days of the date of the notice of the Commissioner, or his designee, declaring the Wireless Telecommunications Facility and/or use abandoned and directing removal, and upon failure to do so the Town may take such action at the expense of the property owner, Applicant, and the operator or owner of the system or equipment, as follows:

A. Notice.  Written notice of the determination that the facility, system or equipment is not in operation, and the equipment and/or use has been deemed abandoned and must be removed within one hundred and twenty (120) calendar days of the date on the notice shall be mailed by the Department of Buildings to the private property owner or the Applicant who filed for the use or installation, and owner and/or operator of the facility, system, or equipment, if known, to their last known address, by regular and certified mail, return receipt, requested. The notice shall also advise the recipient that they are entitled to a hearing on that determination before an Administrative Hearing Officer, provided that written request for such a hearing is received by the Town Attorney with a copy to the Commissioner within thirty (30) calendar days of the date on the notice. If a timely request has been filed, written notice of the date, place, and time of the hearing shall be mailed to the Person(s) who have requested a hearing, or to their attorney(s), if known, along with a statement that they (a) are entitled to be represented by legal counsel at the hearing; (b) they will be provided with an opportunity to be heard and may present the testimony of witnesses, experts, and other evidence in their own behalf; and (c) that upon their failure to appear at the hearing,

50

4854-6728-6566v.1 0048172-000592

then in such event, the determination of the Town shall be final.

B. Amendment, modification, or withdrawal. The Commissioner may, after consultation with the Town Attorney, amend or modify any notice issued if, in his judgment, the circumstances warrant such action provided the amended or modified notice is clearly marked as such and is served as provided in (A) herein within ten (10) calendar days of service of the original notice, and a hearing has not occurred. A notice may be withdrawn at any time.

C. Hearing. All hearings shall be recorded and may be adjourned only upon good cause shown and at the discretion of the Person or entity holding the hearing.

   (1) At the hearing the Hearing Officer shall consider the evidence, and may adopt or reject, in whole or in part, any portion of the Commissioner's determination, with or without conditions, as deemed advisable or necessary under the circumstances. The determination of the Hearing Officer shall be deemed final as to the Town .

   (2) Hearing Officer. The Hearing Officer's findings and recommendations shall be filed with the Town Clerk and mailed to those who requested the hearing or their attorney(s), if known. Upon a finding that the use or equipment has been abandoned, the Commissioner may order the Applicant, operator, and/or owner of the Facility or equipment to demolish and remove the Wireless Telecommunications Facilities and restore the site within the time specified, and upon the failure, neglect, or refusal of such Person(s) to comply, may authorize the code officer or other Town personnel, upon reasonable notice, to enter the premises and demolish and remove the same, and restore the site.

D. Compliance. A property owner, Applicant, operator, or owner of a facility who wishes to comply with the notice of abandonment and order to remove shall notify the Commissioner in writing of its intent to abandon a permitted site. Removal shall comply with applicable health and safety regulations, including demolition permits from the Building Department. Upon completion of the removal process, the site shall be restored to its

51

original condition at the expense of the private property owner, Applicant, operator, or owner of the facility.

E. Grounds for a default. The notice shall automatically become a final order if there has been no request for a hearing within the period specified, or, if having requested a hearing, there has been no appearance at the hearing by the Person who had requested it. The resulting order shall be served in the same manner as the original notice. Such Facilities shall be removed, and the location restored to its original condition by the property owner, Applicant, and owner and operator of the facility or equipment, at their own cost and expense, within one hundred and twenty (120) calendar days of the date of the notice declaring the abandonment. In the event of a default, the Town is authorized, upon reasonable notice, to enter the premises and demolish and remove the same and restore the site.

F. Liability for costs. All facilities or equipment not removed within the required period shall be in violation of this chapter. In the event the Town removes abandoned equipment or facilities upon the failure of the private property owner, Applicant, operator, or facility owner to timely do so, then the private property owner, Applicant, operator, and facility owner shall be jointly and severally liable for the payment of all costs and expenses the Town incurs for the removal of the facilities and restoration of the site, if applicable, including legal fees and costs.

G. Recovery of costs. The costs incurred by the Town shall be certified by the Commissioner of each Town department providing services and the Town Attorney shall mail written notice of such costs by both regular mail and certified or registered mail, return receipt requested, to the property owner, Applicant, owner, or operator of the facility, as the case may be. The notice shall state that upon the failure to pay the amount certified within thirty (30) days of receipt of the notice by money order, or certified or bank check the amount will be added to the tax bill or other action will be taken without further notice. Nothing contained herein shall be construed to limit the Town's remedies or bar the commencement of an action to collect the debt in lieu of a tax lien.

H. Tax lien. In the event the debt is not paid within the ten (10) day period, or if the mailing is returned by the Post

52

4854-6728-6566v.1 0048172-000592

Office because of the inability to make delivery for any reason, as long as the notice was properly addressed to the last known address, such certification of costs shall be provided to the Tax Receiver, who shall cause the costs as shown thereon to be charged against such lands and/or facilities without further notice. The amount so charged shall forthwith become a lien against such lands and/or Facilities and shall be added to and become part of the taxes next to be assessed and levied, the same to bear interest at the same rate as taxes, and shall be collected and enforced by the same officer(s) and in the same manner as taxes.

ARTICLE XII
ADMINISTRATION AND ENFORCEMENT

§142-33. Notice to Comply. Whenever the Commissioner is satisfied that a Wireless Telecommunication Facility is being erected, constructed, installed, modified, renovated, altered or repaired, or that activity is occurring in violation of this Chapter or other applicable law, rule, order or regulation, or in violation of a License Agreement, grant, approval, map or plan issued or approved by an officer, Board, department or agency of the Town, he or she may order compliance by written notice to comply to the property owner, the Applicant who filed for the use or installation, the owner and/or operator of the Facility, system, or equipment, and/or Person committing the offense. The notice to comply shall identify the violation or offense and may, without limitation, require the abatement, remediation or restoration of the Wireless Telecommunications Facility, building, structure, or property, within the period identified in the notice. Such notice shall be deemed to be properly served if a copy is personally delivered to the owner, Person-in-charge, Applicant, operator, or Person committing the offense; or by posting a copy of the notice to comply in a conspicuous place on the property or Facility and mailing a copy by regular and registered or certified mail, return receipt requested, within two (2) business days of its posting to the property owner, Applicant, operator, and Person committing the offense at their last known address, or by such other method authorized by the laws of the State of New York.

§142-34. Stop-work orders.

53

A. Pursuant to Section 6, Appendix A221 governing Building Code Administration, the Commissioner may, in his sole discretion, order the work or installation being performed on any property, building or structure, a Wireless Telecommunication Facility, or an accessory thereof, suspended forthwith if he or she has reasonable grounds to believe that the work or installation is being performed in an unsafe and/or dangerous manner; or the work is not in conformity with the building permit application, plans and/or specifications approved by the Department; or with a map, plan, permit, grant or agreement approved by the Town, its officers and/or Board, any License Agreement, or the work is in violation of any section or article of the Code of the Town of Hempstead, the Building Code of the State of New York and/or other applicable law, ordinance, rule or regulation; or jeopardizes the health, welfare or safety of the public or surrounding community; or is injurious to Town property or the property of others.

B. The stop-work order shall comply with the requirements of Appendix A221 and shall be served and posted upon the property owner or Person-in-charge of the property, the Applicant who filed for the use or installation, the owner and/or operator of the Facility.

C. Violation. It shall be unlawful for any Person to remove, alter, obscure, deface, change or otherwise tamper with any portion of a stop-work order that has been posted by the Town.

D. Suspension of work. Upon the issuance of a stop-work order, the property owner or Person-in-charge of the Property and/or the Applicant shall immediately cease all work and activities which are the subject of the stop-work order.

§142-35. Penalties for Violations.

A. Any property owner, Person in charge of the premises, Applicant, owner or operator of the Wireless Telecommunication Facility or any part thereof, who violates any provision of this Chapter, shall upon conviction thereof be guilty of an offense, punishable by a fine of not less than one thousand ($1,000) dollars nor more than five thousand ($5,000) dollars for a conviction of a first offense; upon conviction of a second offense where the violation is committed within a period of five (5) years of the first conviction, a fine of not less than

54

two thousand ($2,000) dollars nor more than ten thousand ($10,000) dollars; and upon conviction of a third or subsequent offense where the violation is committed within a period of five (5) years of the second convictions a fine of not less than four thousand ($4,000) dollars nor more than fifteen thousand ($15,000) dollars. Each day, or part thereof, such violation continues shall constitute a separate offense punishable in like manner.

B. Any property owner, Person in charge of the premises, Applicant, owner or operator of the Wireless Telecommunication Facility or part thereof, found by the Bureau of Administrative Adjudication to have violated any provision of this Chapter shall likewise be subject to a monetary penalty in an amount within the range of fines authorized in subdivision A for a first offense, subsequent offenses and continuing offenses.

C. In addition to the penalties set forth herein or in other applicable law, rule or regulation, the Town Attorney is authorized to pursue, in a court of competent jurisdiction, civil and equitable relief, including but not limited to compensatory actions; civil penalties in the amount of up to five hundred ($500) dollars per day, or any part thereof; an action to compel compliance with or to restrain by injunction the violation of this Chapter; and other remedies which in the opinion of the Town Attorney may seem necessary and proper. Any civil monetary penalty awarded may be added to the tax bill of the property where the violation has occurred and shall be collected in the same manner.

D. In addition to the penalties set forth herein or in other applicable law, rule or regulation and without limitation, a violation of this Chapter may subject the permit holder to the revocation or suspension of its permit, as provided in this Chapter.

E. No oversight or dereliction of duty on the part of the Town, nor any failure to strictly enforce the terms of this Chapter, shall serve to legalize the maintenance, erection, construction, alteration, Modification, replacement or removal of a Wireless Telecommunication Facility, or to legalize the use and/or occupancy of any property, building or structure for the operation of any Wireless Telecommunication Facility, if the work or activity is conducted in violation of this Chapter or other applicable

55

4854-6728-6566v.1 0048172-000592

local, state and/or federal law, rule, ordinance or regulation.

Section 2.    Severability.

If any clause, sentence, paragraph, subdivision, section or other part of this local law shall for any reason be adjudged by any court of competent jurisdiction to be unconstitutional or otherwise invalidated, such judgment shall not affect, impair or invalidate the remainder of this local law, and it shall be construed to have been the legislative intent to enact this local law without such unconstitutional or invalid parts therein.

Section 3.    Effective Date.

This Local Law shall take effect immediately upon filing in the Office of the Secretary of State of the State of New York.

VOTE:                    AYES:        NOES:
ABSTENTIONS:

Donald X. Clavin, Jr.
Dorothy L. Goosby
Thomas E. Muscarella
Melissa Miller
Chris Carini
Dennis Dunne, Sr.
Anthony P. D'Esposito

THE RESOLUTION WAS THEREUPON DECLARED DULY ADOPTED.

56

<u>NOTICE OF PUBLIC HEARING</u>

**PLEASE TAKE NOTICE** that pursuant to Article 9 of the New York State Constitution, the provisions of the Town Law and Municipal Home Rule Law of the State of New York, as amended, a public hearing will be held in the Nathan L. H. Bennett Pavilion, Hempstead Town Hall, Town Hall Plaza, 1 Washington Street, Village and Town of Hempstead, New York, on the 6th day of December 2022 at 10:30 in the forenoon of that day, to consider amendments to section 86-11 of Chapter 86 "Building Construction Administration" of the Hempstead Town Code to adjust several Building Department fees.

The proposed local law is available at hempsteadny.gov, on the bulletin board at Town Hall as of the publication of this notice, and on file in the Office of the Town Clerk of the Town of Hempstead, Hempstead Town Hall, 1 Washington Street, Hempstead, New York, where the same may be inspected during office hours.

ALL PERSONS INTERESTED shall have an opportunity to be heard on said proposal at the time and place aforesaid.

Dated:   Hempstead, New York
         November 22, 2022

                              BY ORDER OF THE TOWN BOARD
                              TOWN OF HEMPSTEAD, NEW YORK.

                                   KATE MURRAY
                                   Town Clerk

DONALD X. CLAVIN, JR.
Supervisor

Item # _____ 13

Case # 14509

Intro No. _____                                          Print No. _____

Town of Hempstead

A LOCAL LAW TO AMEND SECTION 86-11 OF CHAPTER 86 OF THE HEMPSTEAD TOWN CODE ENTITLED "BUILDING CONSTRUCTION ADMINISTRATION"

Introduced by Councilmember _____.

BE IT ENACTED by the Town Board of the Town of Hempstead as follows:

Section 1.      Section 86-11 of Chapter 86 of the Hempstead Town Code entitled "Building Construction Administration" is hereby amended to read as follows:

Chapter 86

Building Construction Administration

\*      \*      \*

§ 86-11. Fees.

A.  All fees prescribed in this section shall be collected by the Building Inspector, and no permits shall be issued by the Building Inspector until such fees have been paid.

B.  The estimated cost herein referred to means the amount of money that would ordinarily be expended for good, safe construction in the erection of the complete building or structure, exclusive of interior decoration.

C.  Buildings, structures, and alterations.

(1)  For a permit for a new building or structure, or for the alteration of an existing building or structure, when the estimated cost does not exceed $1,000, the fee shall be $200 for residential and $400 for commercial; when the estimated cost exceeds $1,000, the fee shall be $100, plus $15 for each additional $1,000 or fraction thereof of estimated cost.

(2)  For a permit for a building or structure or for the alteration of an existing building or structure where construction has been undertaken prior to the issuance of a building permit, for which the cost did not exceed $1,000, the fee shall be $400; when the cost exceeded $1,000, the fee shall be $400 for residential and $800 for commercial, plus $30 for each additional $1,000 or fraction thereof of cost. For the purpose of this subsection, cost shall be based upon current construction cost calculations. Nothing herein shall be construed as authorizing construction or alterations of any building or structure requiring the issuance of a permit, unless and until a valid permit has been issued by the Department of Buildings therefor.

(3)  For all buildings permits that are expired within one year of completion, inspection fee for residential permits shall be $175 and $200 for commercial and any additional permits being inspection on the same premises shall have an additional inspection fee $75 per permit for residential and $100 for commercial.

(4)  Multiple accessory structures filed under one application shall be charged $200 for residential or $400 for residential maintain fee for each separate accessory structure filed under one application.

(5)  An individual requesting an extension of time, the fee shall be 25% off the original building permit fee but shall not exceed no more than $200.00. An extension of time can only be issued only when the permit is about to expire in no more than a week but, in order to receive an extension of time, an inspection is required.

Page **1** of 6

D. For a permit for a new one- or two-family dwelling, the first fee shall be $500 plus the fee computed using Subsection C hereof, whichever is greater. These fees shall not be refundable.

E. For a permit other than a permit for the erection or alteration of a structure, which permit shall be known as a "use permit," the fee shall be $500 for a residential use and $800 for a commercial use, except that there shall be a fee of $75 in the case of a use permit for the use of a coal- or wood-burning stove.

F. For a permit to move a building or structure, the fee shall be $750.

G. For a permit for the demolition of a building or structure or part thereof, the fee shall be $400 for a single- or two-family dwelling; $150 for all other residential buildings or structures; and $800 for all nonresidential buildings or structures, provided that if the demolition is a necessary part of an alteration for which a permit has been issued, no legal fee shall be required for such demolition.

H. For an original certificate of occupancy for a one- or two-family dwelling or use, the fee shall be $300. For an original certificate of occupancy for all other buildings, the minimum fee shall be $300, plus $5 per $1,000 or fraction thereof of cost of construction above $1,000, up to a maximum fee of $2,000. A temporary certificate of occupancy shall require a fee of $300.

I. Elevators or escalators and heating, air-conditioning and other systems.

(1) For a permit for the installation or alteration of one or more elevators or escalators in or in connection with a building or structure, the fee shall be $250 for estimated cost up to $1,000, plus $15 for each additional $1,000 or part thereof of estimated cost, provided that if such elevators or escalators are part of a new building or alteration for which a permit had been issued, no separate fee shall be charged.

(2) For a permit for the installation or alteration of one or more major heating systems, air-conditioning systems, ventilation systems, exhaust systems, refrigeration systems, water-cooling systems and water-cooling towers, in or in connection with a building or structure, the fee shall be $300 for an estimated cost of up to $1,000, plus $15 for each additional $1,000 or part thereof of estimated cost, provided that if such major heating systems, air-conditioning systems, ventilation systems, water-cooling systems or water-cooling towers are part of a new building or alteration for which a permit has been issued, no separate fee shall be charged.

J. For a permit for a vault or area outside street lines, the fee shall be considered a commercial use permit of $800.

K. Duplicates and photostats. For the issuance of a duplicate or photostat of any document on file with the Department of Buildings, the fee shall be based on the Freedom of Information Act[1] and amendments thereto.

[1]Editor's Note: See 5 U.S.C. § 552 et seq.

L. For all certificates of completion relating to building permits, the fee shall be $$100 for residential and for commercial, payable upon issuance of a building permit.

M. For processing a request for a property search or issuing a certified copy of an existing certificate of occupancy or certificate of completion, the fee shall be $$40.

N. For a permit to install any new plumbing or drainage work in a building or structure, the fee shall be a minimum of $70, plus an additional $40 for residential and $60 for commercial for each fixture over one. For a permit for any plumbing or drainage work in a building or structure, where the plumbing work has been undertaken prior to the issuance of a plumbing permit, the fee shall be a minimum of $120 for residential and $200 for commercial, plus $60 for residential and $100 for commercial for each fixture over one.

O. For a permit to extend a vent stack, the fee shall be $75 for residential and $100 for commercial.

P. Fixtures, house drains and meters.

    (1) For a permit to connect a single fixture, or the replacement of fixtures, to an existing plumbing system, the fee shall be a minimum of $70 for residential and $100 for commercial, plus an additional $30 for residential and $50 for commercial for each fixture over one.

    (2) For a permit to alter a house drain in conjunction with a current sewer permit, the fee shall be $50 for residential and $75 for commercial.

    (3) For a permit to install a gas meter for natural gas or a device to connect a source of liquefied petroleum gas:

        (a) To a new or existing building or structure, first meter: no additional charge above the per-fixture charge for appliances to be serviced.

        (b) To a new or existing building or structure, additional meter: $60 for residential and $100 for commercial in addition to the per-fixture charge for appliances to be served.

        (c) For replacement of an existing meter or device with a meter or device of greater capacity: no additional charge above the per-fixture charge for appliances creating the higher gas flow replacement.

Q. For a certificate of approval of plumbing or drainage work, the fee shall be $$100 for residential and commercial, payable upon issuance of a plumbing permit.

R. Water service.

    (1) For a permit to install a sprinkler or standpipe system in a building, the fee shall be $60 for residential and $100 for commercial per cost of installation of $1,000, plus $30 for residential and $50 for commercial for each additional cost of $1,000 or part thereof.

    (2) For a permit based upon the size of the water service/fire service and backflow prevention device the fees shall be:

| Description | Residential Construct | Commercial Construct |
|---|---|---|
| Water and fire mains – 1" | $140.00 | $350.00 |
| Water and fire mains backflow-1" | $70.00 | $100.00 |
| Water and fire mains – 1.25" to 2" | $220.00 | $450.00 |
| Water and fire mains backflow-1.25" to 2" | $70.00 | $100.00 |
| Water and fire mains – 3" to 4" | NA | $550.00 |
| Water and fire mains backflow-3" to 4" | NA | $200.00 |
| Water and fire mains – 5" to 8" | NA | $650.00 |
| Water and fire mains backflow-5" to 8" | NA | $250.00 |

*All plumbing/ gas fees started without the benefit of a permit shall be filed as a maintain permit and the fees are to be doubled with the exception of the Certificate of Approval Fees.

S. For a permit to Replace a fire escape, the fee shall be $400 for an estimated cost of installation of up to $1,000, plus $15 for each additional $1,000 or fraction thereof of estimated cost.

T. The annual registration fee for a multiple residence or any inspection of a multiple residence at the request of any person, firm or corporation shall be $350 for up to and including 10 units and $10 per unit thereafter.

U. The Building Inspector is authorized to fix, by regulations, a schedule of square feet and/or cubic feet for buildings or structures of varying types of construction and classes of occupancy to serve as the basis for determining estimated costs. The estimated cost of the structure shall be determined by the Building Inspector.

V. The payment of a fee, as provided in this section, shall in no way relieve the applicant or holder of the permit from the payment of other fees that may be prescribed by law or ordinance for inspection, certificates, sewer connections, water taps or other privileges or requirements. In an instance where an inspection is required for permits that have been expired more than two years, for the first permit the fee shall be $175 for residential and $200 for commercial and for every permit over one the fee shall be $75 each.

W. After building permit application has been approved or a building permit has been issued, no fees in this section shall be refunded for reason of abandonment of the project or revocation of a permit or for willful violation of the provisions of the Building Code.

X. When an applicant for a permit under Subsection C of this section files supplementary plans which require a reexamination by plan examiners after an approval of the application, an additional fee shall be charged in the following amounts: $75 for residential and $100 for everything else.

   (1) Where the estimated cost of change does not exceed $1,000 the fee shall be 20% of the original permit fees, with a maximum percentage fee of $2,000.

Y. A special or unusual research of the Department of Buildings' records shall be performed at the following fee schedule:
   (1) Clerical to Grade 15, the fee shall be $15 per hour or fraction thereof.

   (2) Semiprofessional to Grade 23, the fee shall be $25 per hour or fraction thereof.

   (3) Professional above Grade 23, the fee shall be $50 per hour or fraction thereof.

Z. In an instance where an additional inspection is requested, other than any inspection required with the issuance of a permit, including mother/daughter, senior residence, etc. the fee shall be $150.

AA.    The fee for an application to the Department of Buildings for a permit to maintain a second kitchen in a one-family dwelling shall be $200.

There may be additional fees associated with the BZA per Chapter 85 of the board of architectural review in town code.

BB.    The fee for an application to the Department of Buildings for a certificate of occupancy specifying a legal nonconforming use shall be $400 for a one- or two-family dwelling and $750 per application for all other uses.

CC.    For each inspection caused to be made by the Commissioner of the Department of Buildings pursuant to § 89-3C of the Code of the Town of Hempstead, the fee shall be $$300.

DD.    For a sewer permit to install or repair a house sewer, the fee shall be $125 plus $75 for the C/A (this item complies for both Residential & Commercials).

EE. The fee for an application to install a residential solar photovoltaic system shall be $300 and Power wall shall be $200.

   (1) Legislative intent.
      (a) It has been established that the building permit application process, including building permit application fees, is an impediment to the advancement of deploying solar energy on Long Island.

      (b) It is the intent of the Town to protect the public health, safety and welfare of its residents and promote the use of renewable forms of energy.

      (c) The fee for the installation of residential solar photovoltaic systems is currently determined by the estimated cost of construction.

      (d) By establishing a building permit application fee cap for the installation of residential solar photovoltaic systems and power walls, set at a nominal fee of $300 for solar panels and $200 for power wall the Town of Hempstead is encouraging the development and growth of renewable forms of energy in the Town.

**FF.**   Wireless Telecommunications Installations.

    (1)     The fee for the modification of an existing macro facility constituting an Eligible Facilities Request [47 C.F.R.1.6100(3)] shall be $2,500.

    (2)     The fee for collocation [47 C.F.R. § 1.6002(g)(1-3)] on an existing structure shall be $2,500.

    (3)     The installation of a wireless macro facility on a new site involving a new, freestanding structure shall be $3,500.

    (4)     The installation of a Small Wireless Facility [47 C.F.R. § 1.6002] including, Distributed Antenna System (DAS) node (outdoor and/or indoor) upon an existing utility or non-utility structure shall be $500 for the first five (5) nodes, with an additional $100 for each additional node.

    (5)     The installation of a Small Wireless Facility [47 C.F.R. § 1.6002] including, Distributed Antenna System (DAS) node (outdoor and/or indoor) on a new freestanding structure (not involving a co-location) shall be $1,000 for non-recurring fees for a new pole intended to support one or more Small Wireless Facilities.

    (6)     There shall be an annual fee of $270 for a Small Wireless Facility [47 C.F.R. § 1.6002] including, Distributed Antenna System (DAS) node (outdoor and/or indoor).

    (7)     The attachment of a Small Wireless Facility [47 C.F.R. § 1.6002] including, Distributed Antenna System (DAS) node (outdoor and/or indoor) to municipally owned structures in the municipal right-of-way shall be $500.

**GG.**   Fee for scanning of filed application documents for internal Department of Buildings database: $35 for each 20 pages scanned or final fraction thereof, payable at the time that a final determination is rendered on the application.

**HH.**   Fee for expedited review of certain minor building permit applications within A timely Fashion days after filing (in addition to all other applicable fees): proposed: $200 per application; maintain: $$400 per application. Covered applications shall be those which the Commissioner of Buildings determines to be minor, pursuant to rules to be promulgated and amended from time to time by the Commissioner. Notwithstanding the foregoing, the Commissioner of Buildings shall have the authority to determine that any building permit application shall not be eligible for expedited review. Notwithstanding the foregoing, any application which is the subject of a current and binding stop-work order, or for which a notice of violation has been issued, or for which there are any outstanding enforcement proceedings commenced by the Town, shall not be eligible for expedited review. No such review shall constitute a guarantee that any application shall be finally determined within a specific time period.

**II.**   No sign authorized by the Board of Zoning Appeals or subject to a permit required by this article shall be erected or maintained until a permit, or the renewal of an existing permit, is issued by the Commissioner of Buildings, subject to the payment of a fee, every three years, in the amount of $1.75 per square foot, or fraction thereof, for each face of the sign used. The minimum fee, every three years, for each sign requiring a permit shall be $50, and $100 for maintain except as otherwise stated in this article.

JJ.

    1.  Fees for public assembly licenses issued under this chapter shall be payable annually and shall be based on the number of persons each place is designed to accommodate as certified by the Commissioner.

    2.  Fee per number of persons; maximum.

        a)  Annual fees for public assembly licenses shall be determined pursuant to the following table:

| Capacity in Persons | Fee per Year or Fraction Thereof |
|---|---|
| 0 to 100 | $250 |
| 101 to 300 | $400 |
| 301 to 500 | $500 |
| 501 to 1000 | $900 |
| 1,001 to 1,100 | $1,500 |

        b)  An additional fee of $25 shall be charged for each 100 persons or fraction thereof in excess of $1,100.

    3.  Where there is more than one place of public assembly in the same building and the applicant is the same for the several places of public assembly therein, the fee shall be determined on the basis of the sum of the combined occupancies.

    4.  The fee required for filing an application under this chapter shall be $150. If the application is disapproved, the filing fee shall be retained to cover the cost of processing. If the application is approved, the filings fee shall be credited and applied to the total fee.

    5.  The fee for the extension of a temporary license shall be $50 for each 30 days or fraction thereof and shall be payable upon application for each extension. Any fees paid for an extension of a temporary license shall be nonreturnable and shall not be applicable to the total fee required.

    6.  A fee of $25 shall be charged for the replacement or substitute copy of a temporary or approved license or occupancy poster.

KK.  Reinstatement of expired permit fee shall be based upon the percentage of work yet to be completed and the original permit fee charged. An additional reinspection fee of $175.00 for residential and $200 for commercial will be charged for verification purposes.

LL.  Sec 1203 Condition Assessment administration report filing fee with the department of building shall be $150.00

\*    \*    \*

Section 2.    This law shall be immediately effective upon filing with the Secretary of State.